**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tommy Joe BARROW, Defendant–
Appellant.**

**Nos. 95–1686, 96–1577.**

United States Court of Appeals,
Sixth Circuit.

Argued (95–1686) Nov. 21, 1996.

Submitted (96–1577) Nov. 21, 1996.

Decided July 2, 1997.

Sheldon Light (argued and briefed), Patricia G. Blake, Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee in No. 95–1686.

Sheldon Light (briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee in No. 96–1577.

Tommy Joe Barrow (briefed), Detroit, MI, pro se in No. 96–1577.

Allan S. Rubin (argued), Carl L. Rubin (briefed), Rubin & Rubin, Southfield, MI, Tommy Joe Barrow (briefed), Detroit, MI, for Defendant–Appellant in No. 95–1686.

Before: KENNEDY, BOGGS, and WOOD,* Circuit Judges.

* The Honorable Harlington Wood, Jr., Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

## OPINION

KENNEDY, Circuit Judge.

Defendant, Tommy Joe Barrow, appeals his convictions for making a false statement in connection with a loan application in violation of 18 U.S.C. § 1014, bank fraud in violation of 18 U.S.C. § 1344, income tax evasion in violation of 26 U.S.C. § 7201, and willfully filing false tax returns in violation of 26 U.S.C. § 7206. For the following reasons, we reject defendant's assignments of error.

### I. Facts

#### A. Background

Defendant was a certified public accountant who was the founder, as well as the controlling shareholder, of a Detroit accounting firm, Barrow, Aldridge & Co. In addition, defendant was the sole proprietor of a data processing company, Complete Information Services (CIS). In 1982, defendant was elected to the Board of Directors of Detroit Central Hospital, and in 1986 he became chairman.

During this time, the hospital was renamed New Center Hospital (New Center) and ownership was transferred to a holding company, Central City Health Services (Central City). By 1986, defendant's accounting firm had become the accounting department for the hospital and the holding company. By 1987, CIS was performing computerized billing services for the hospital and related entities. Around this time, defendant became chief executive officer of both New Center and Central City.

On October 12, 1993, a Grand Jury returned a 15 count indictment against defendant, charging him with making false statements in connection with a bank loan application, 18 U.S.C. § 1014 (Count One); bank fraud, 18 U.S.C. § 1344 (Count Two); income tax evasion in 1984 through 1988, 26 U.S.C. § 7201 (Counts Three, Five, Seven, Nine, and Eleven); and willfully filing false tax returns,[1] 26 U.S.C. § 7206 (Counts Four, Six, Eight, Ten, and Twelve through Fifteen). Following a ten-day tri-

al, the jury acquitted defendant on Counts Three, Four, Seven, and Eight (1984 and 1986 tax evasion and false tax return counts). The jury convicted on all other counts. The following summarizes the general facts pertaining to each count for which defendant was convicted.

### B. Convictions

#### 1. False Loan Application and Bank Fraud

#### (Counts One and Two)

In March 1986, defendant applied for a $100,000 loan from Great Lakes Federal Savings (Great Lakes) in order to purchase a boat. In support of his loan application, defendant provided the bank with a personal financial statement, a document purporting to be his 1984 U.S. Individual Income Tax Return (Form 1040), and a document purporting to be his 1985 W–2 Wage and Tax Statement from Barrow, Aldridge & Co. The government presented testimony that the bank relied on these documents in assessing and approving defendant's loan. In May 1986, Great Lakes loaned defendant $105,000 to buy the boat.

The information and documents that defendant submitted to the bank were fraudulent. When he applied for the loan, defendant had not filed a 1984 income tax return; in fact, he did not file his 1984 return until July 13, 1987, over a year after he obtained the loan. Furthermore, the false 1984 return stated that his total income in 1984 was $92,037.69, including $86,920.04 in wages, and that he had paid $15,921.00 in taxes. But the 1984 tax return that he actually filed with the Internal Revenue Service (IRS) in 1987 declared a total income of only $24,059.38, wages of only $39,879.01, and zero tax liability.

Moreover, the 1985 W–2 form that defendant submitted to the bank indicated that his wages from Barrows, Aldridge & Co. were $96,147.29, with federal income tax withholdings of $14,389.56, but the 1985 W–2 form

---

1. Defendant was charged with filing a false Individual Income Tax Return, Form 1040, in 1984 through 1988, and was charged with filing a false Corporate Income Tax Return, Form 1120X, in 1988 (First Amendment), 1988 (Second Amendment), and 1989 (Amendment).

that was filed with the IRS showed wages of only $35,905.94, with no federal income tax withheld. Finally, the figures in the false tax documents corresponded to the figures in the loan application and the personal financial statement.

### 2. Tax Evasion and False Individual Returns

#### (Counts Five, Six, and Nine Through Twelve)

Defendant prepared his own individual income tax returns for 1984 through 1988, the years charged in the indictment. In 1989, the IRS began a civil audit of both Barrow, Aldridge & Co. and defendant, focusing in part on information that defendant or his firm had received unreported income from New Center or Central City. The evidence at trial established that defendant had underreported income that he had received in the form of CIS's gross receipts. The unreported income totaled over $29,000 for the years defendant was convicted. In addition to underreporting his CIS income, defendant deducted as a business expense several thousand dollars in payments to a housekeeper who cleaned his personal residence and performed no services for CIS. Defendant also took over $8,000 in unreported income in 1988 by diverting and depositing into his personal account a check payable to Barrow, Aldridge & Co.

Defendant also received large amounts of unreported income from New Center, Central City, and related entities. Specifically, defendant received compensation for his services as CEO in the form of checks made out to him personally, which he deposited into his personal bank account. This unreported income totaled over $108,000 for 1985, 1987, and 1988.

In total, defendant did not report over $150,000 of income for the years of conviction. Defendant's tax deficiency was $52,000 for those years.

### 3. False Corporate Returns

#### (Counts Thirteen Through Fifteen)

Defendant also prepared corporate tax returns for Barrow, Aldridge & Co. During the civil audit of both the accounting firm and defendant, defendant filed three amended corporate income tax returns for the firm. These amended returns purported to increase the reported income of the corporation for the fiscal years ending March 31, 1988 and March 31, 1989, stating that the income of Barrow, Aldridge & Co. was to be increased "due to income inadvertently omitted from Corporate return, however, no tax is due because of available not [sic] operating loss from prior year." The government proved that the amended corporate returns were false because defendant should have claimed the income on his individual tax returns.

### C. District Court Proceedings

On October 20, 1994, defendant filed a Motion for Judgment of Acquittal, challenging the evidentiary basis of his tax evasion convictions. On January 29, 1995, the District Court denied the motion. An evidentiary hearing was held concerning sentencing and, on June 5, 1995, defendant was sentenced to concurrent terms of 21 months imprisonment, a fine of $11,000, restitution to Great Lakes Federal Savings in the amount of $39,000, restitution to the Great Lake Bancorp and to the Internal Revenue Service in the amount of $42,195.71, and a special assessment of $550.

A notice of appeal of the judgment was timely filed on June 14, 1995. This Court entered an order dismissing the appeal on October 4, 1995, but we reinstated the appeal on November 16, 1995. On January 12, 1996, defendant filed his initial brief on appeal. At that point, the government discovered that four documents—the stipulated jury instructions, the government's request for jury instructions, the "defense theory" instructions, and the Government Submission Regarding Jury Instructions—had been omitted from the record. The government filed a motion with the District Court requesting that it correct the record on appeal and make a record of the court's procedure requiring the submission of stipulated and non-stipulated jury instructions. The District Court denied this motion, stating that "[p]laintiff has not

explained in its motion exactly why it seeks to add the above items to the record."

The government filed a motion for reconsideration, this time explaining to the court that defendant was challenging the instructions on appeal and that it wished to rely on the "invited error" doctrine. The District Court subsequently granted the government's motion for reconsideration, finding that the government had more adequately explained its reasons and confirming that the documents had been submitted to and considered by the court during the trial. Moreover, the court certified that

> [d]uring the course of the trial in this case, the Court directed the parties to attempt to stipulate to as many of their proposed jury instructions as possible, and to jointly submit the stipulated instructions. The Court further directed the parties to submit to the Court any other instructions to which the parties could not stipulate.... Based upon all of these submissions, the Court instructed the jury on September 26, 1994, giving the instructions to which the parties had stipulated, supplemented by such additional proposed instructions which this Court found to be appropriate.... The Court then allowed the parties to object to the Court's instructions....

Finally, the court ordered that the relevant documents be made a part of the record on appeal.

On April 22, 1996, defendant filed a motion for reconsideration of the District Court's order, arguing that the modification of the record was outside the scope of FED. R.APP. P. 10(e) and would affect the substantive nature of the matter on appeal. Defendant requested that the court at least hold an evidentiary hearing to determine whether the stipulations did in fact occur. Defendant pro se appeals the court's denial of his motion.

We consider both of defendant's appeals in this opinion.

## II. Discussion

In both his principal brief and a pro se supplemental brief, defendant makes a number of arguments for reversal of his convictions. In Case No. 95–1686, defendant pro se asserts that there was prosecutorial and juror misconduct, and that evidence presented at sentencing demonstrates that the government's evidence at trial was false. Through counsel, defendant asserts: (1) there was a substantial variance between the allegations of Count Five of the indictment and the government's trial proofs; (2) the District Court committed plain error in instructing the jury that the bank, Great Lakes Federal Savings, was federally insured at the time of the offenses described in Counts One and Two; (3) the District Court erred in failing to instruct the jury that the materiality of the alleged false statement was an element of the 18 U.S.C. § 1014 offense described in Count One; (4) the District Court erred in instructing the jury that overreporting or underreporting income was material as a matter of law; and (5) trial counsel was ineffective. Defendant in his reply brief asserts that the introduction at trial of false evidence mandates reversal. Finally, in Case No. 96–1577, defendant pro se asserts that the District Court erred when it supplemented the record on appeal pursuant to FED. R.APP. P. 10(e). We consider each of these claims in turn.

### A. Supplement to Record on Appeal

■■■ We must first determine the composition of the record on appeal. In general, the appellate court should have before it the record and facts considered by the District Court. *See S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.,* 678 F.2d 636, 641 (6th Cir.1982). The District Court does have limited discretion to modify or change the record on appeal. Specifically, FED. R.APP. P. 10(e) allows such modifications in two instances: (1) when the parties dispute whether the record actually discloses what occurred in the District Court and (2) when a material matter is omitted by error or accident.[2] We have not allowed the rule to be

---

**2.** Rule 10(e) provides in pertinent part:

If any difference arises as to whether the record truly discloses what occurred in the dis-

used to add new evidence that substantially alters the record after notice of appeal has been filed; rather we have allowed enough modification to ensure the accuracy of the record. *See S & E Shipping Corp.*, 678 F.2d at 641. The term "error or accident" in Rule 10(e) "should be broadly interpreted to permit the record to be supplemented by any matter which is properly a part thereof. Omissions from the record may result from the error or inadvertence of the parties, the court reporter, the district court clerk or the judge." 9 MOORE'S FEDERAL PRACTICE ¶ 210.08[1], at 10–53 (2d ed.1980).

We conclude that the District Court did not err in supplementing the record. As the court explained in denying defendant's motion for reconsideration, "[u]ltimately the [District] Court has direct knowledge of what the parties submitted in this case and of what the Court's own general procedures are." The court certified that these documents were submitted to and used by the court, and it certified a description of its general procedures. We have no reason to disbelieve these certifications. In sum, we believe that the record "has been made to conform to the truth." FED. R.APP. P. 10(e). Accordingly, we will consider the added documents as part of the record of the proceedings before the District Court.

### B. Constructive Amendment

Defendant first argues that there was a substantial variance between the allegations of Count Five in the indictment, which charged defendant with tax evasion in 1985, and the government's trial proofs, which established a tax deficiency based on the Alternative Minimum Tax (AMT), 26 U.S.C. § 55. Defendant maintains that if the trial proofs had been confined to the indictment, the evidence would have failed to establish that defendant had evaded taxes for 1985, because even though he underreported income, that

income still would not have generated any regular tax liability.

■■■ "A variance occurs when 'the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986) (quoting *United States v. Castro*, 776 F.2d 1118, 1121 (3d Cir.1985)). "In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment." *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978); *see also United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir.1989). Defendant does not contend that an actual, *i.e.* "literal", amendment occurred, whereby the charging terms of the indictment were actually altered. *Hathaway*, 798 F.2d at 910. Such an amendment is considered per se prejudicial and warrants reversal of a conviction. *Ford*, 872 F.2d at 1235. Rather, defendant claims that the evidence "in effect" amended Count Five. Such a "constructive amendment" falls somewhere between an actual amendment and a variance. This Circuit has held that a variance rises to the level of a constructive amendment

> when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.

*Hathaway*, 798 F.2d at 910.

■■■ While the distinction between a variance and a constructive amendment is at best "shadowy," *see* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 516, at 26 (2d ed.1982), the consequences of each are significantly different. A variance will not constitute reversible error unless "substantial rights" of the defendant have been affected. *Hathaway*, 798 F.2d at 910. "Substantial

trict court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties, by stipulation, or the district court either before or after the record is transmitted

to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. FED. R.APP. P. 10(e).

rights are affected only when a defendant shows 'prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *Id.* (quoting *United States v. Miller,* 471 U.S. 130, 138 n. 5, 105 S.Ct. 1811, 1816 n. 5, 85 L.Ed.2d 99 (1985)); *see also United States v. Hart,* 70 F.3d 854, 860 (6th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996). A constructive amendment, on the other hand, is "a variance that is accorded the per se prejudicial treatment of an amendment," because, like an actual amendment, it infringes upon the Fifth Amendment's grand jury guarantee. *See Ford,* 872 F.2d at 1235. Consequently, a constructive amendment warrants reversal of a conviction. *See id.* The defendant has the burden of proving the existence of a variance and that such variance is "fatal," *i.e.* that the variance affected substantial rights or rose to the level of a constructive amendment. *See United States v. Blandford,* 33 F.3d 685, 701 (6th Cir.1994), *cert. denied,* 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 743 (1995).

■■■■■ Count Five of the indictment alleged that defendant had attempted to evade income tax in violation of 26 U.S.C. § 7201. More specifically, the count charged:

> On or about January 11, 1988 … defendant TOMMY JOE BARROW … did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 1985, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent 1985 U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service, wherein it was stated that his taxable income for said calendar year was the sum of $0, and that the amount of tax due and owing thereon was the sum of "NONE," whereas defendant TOMMY JOE BARROW then and there well knew and believed that, his taxable income for the said calendar year was substantially in excess of that heretofore stated, and upon said additional taxable income a substantial additional tax was due and owing to the United States of America.

Section 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title" shall be guilty of a felony. In order to convict a defendant under § 7201, the government must show beyond a reasonable doubt: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or an attempted evasion of the tax. *United States v. Daniel,* 956 F.2d 540, 542 (6th Cir.1992). Defendant claims that the proof at trial regarding the second element of the offense amounted to a constructive amendment of the indictment because the existence of a tax deficiency was established through the AMT, as opposed to through the regular tax provisions. Defendant also asserts that the affirmative act for which he was convicted was failure to file Form 6251, the AMT Computation Form, as opposed to underreporting of income, as alleged in the indictment.

The AMT requires the recalculation of a taxpayer's income under a different set of rules. *See* 26 U.S.C. § 55. A tax is imposed at a graduated rate on the taxpayer's "alternative minimum taxable income"; if the amount of AMT is greater than the income tax calculated under the ordinary provisions, then the taxpayer must pay both the normal tax and the amount by which his AMT liability exceeds his ordinary tax liability. *See United States v. Hill,* 506 U.S. 546, 551 n. 3, 113 S.Ct. 941, 947 n. 3, 122 L.Ed.2d 330 (1993) (discussing the AMT). Individuals are required to declare and pay AMT on their tax returns by stating their liability for the tax on Line 52 of their Form 1040 and attaching to their Form 1040 a prepared Form 6251.

We first find that the trial proofs did not constructively amend the indictment, because they did not "so modify essential elements of the offense charged," *Hathaway,* 798 F.2d at 910, that there is a "substantial likelihood" that defendant may have been convicted of an offense other than tax evasion. Contrary to defendant's assertion, he was not charged simply with evading taxes. Rather, the plain terms of the indictment demonstrate that the affirmative act defendant was charged with taking was evading taxes by "preparing and

causing to be prepared, and by signing and causing to be signed, a false and fraudulent 1985 U.S. Individual Tax Return, Form 1040." The Form 1040 required that he indicate his AMT liability and include a AMT Computation Form. He did neither. Thus, as generally charged in the indictment, defendant filed a false tax return because he omitted information required on the Form 1040 and thereby evaded paying taxes, specifically the AMT.

Having concluded that the indictment was not constructively amended, however, we must still consider whether the government's actions amounted to a "fatal" variance. We find that defendant has not shown that a variance even occurred or, if one did occur, that his substantial rights were affected. First, the government's proof at trial was not "materially" different from the facts alleged in the indictment. *See Beeler*, 587 F.2d at 342. The indictment stated in general terms that defendant knew that he had "taxable income for the said calendar year ... substantially in excess [of what he stated], and upon said additional income a substantial additional tax was due and owing." The government showed that defendant had underreported income. Defendant asserts that the underreporting of income, however, did not cause any tax deficiency since he still had no regular tax liability even with the correct income amount. But the underreported income did cause an AMT deficiency, because the AMT computation is based on adjusted gross income. *See* 26 U.S.C. § 55(b)(2). Moreover, § 55 of the Internal Revenue Code requires the payment of AMT, a certain kind of tax, if applicable. *See* 29 U.S.C. § 55. Defendant counters that "substantial additional tax" must have meant regular tax, as opposed to AMT. We find that the indictment was not so specific. Thus, given the generality of the facts alleged in the indictment, we cannot say that the government's evidence at trial was materially different.

But even assuming arguendo that a variance did occur, defendant has not demonstrated that the variance took him by surprise or placed him at risk of double jeopardy. See *Hart*, 70 F.3d at 860. At trial, defendant did not object to testimo-

ny regarding his AMT liability nor did he claim surprise. Indeed, defendant's expert witness testified at trial that he believed that defendant owed an AMT, although an amount less than the government claimed. Moreover, defendant was aware of the AMT obligation, as demonstrated by the fact that he prepared and attached a Form 6251 to his 1982 return.

In sum, we conclude that even if a variance occurred, it did not prejudice defendant so as to be deemed fatal, and it did not rise to the level of a constructive amendment. Reversal of defendant's conviction under Count Five is not warranted on this ground.

### C. Errors in Jury Instructions

■ Defendant asserts a number of errors with regard to the District Court's jury instructions which he claims merit reversal of the relevant counts. Initially, the government asserts that defendant waived any claims of error because he stipulated to the jury instructions to which he now objects. Moreover, as defendant concedes, he did not object contemporaneously to the instructions. In support of its position, the government relies on *United States v. Sharpe*, 996 F.2d 125 (6th Cir.1993), in which the defendant challenged the jury instructions as a whole. This Court stated:

> [Defendant] did not object to these jury instructions in the district court. In fact, the instructions that the jury received were jointly submitted by the government and the appellant. "[N]ot even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge." *United States v. Young*, 745 F.2d 733, 752 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).

*Id.* at 128–29. In *Sharpe*, we also explained the doctrine of "invited error" which holds that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to make. *Id.* at 129. This doctrine is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences by having the verdict vacated. *See*

*Harvis v. Roadway Express, Inc.,* 923 F.2d 59, 61 (6th Cir.1991). We have suggested that the doctrine applies to jury instructions requested by a party who later complains on appeal. *Sharpe,* 996 F.2d at 129 (citing *United States v. Baytank, Inc.,* 934 F.2d 599, 606–07 (5th Cir.1991)).

█ Invited error, however, does not foreclose relief when the interests of justice demand otherwise. *See Fryman v. Federal Crop Ins. Corp.,* 936 F.2d 244, 251 (6th Cir. 1991). Whether the circumstances of a particular case justify deviation from the normal rule of waiver under this doctrine is left largely to the discretion of the appellate court. *Id.* We conclude that the doctrine of invited error does not foreclose our review in this case. Most importantly, assuming that error occurred, the government was as much at fault for inviting the error as the defendant since the parties stipulated to the same instructions. *See Fryman,* 936 F.2d at 251. In addition, this case can be distinguished from *Sharpe* in that the defendant in that case was simply challenging the jury instructions as faulty, *see* 996 F.2d at 128, while the defendant here is claiming that his constitutional rights have been violated because the District Court instructed the jury that the government had proven certain elements of the offenses. Thus, this is a case where the interests of justice would best be served if we consider defendant's assignments of error, even if we find they have no merit. This does not mean, however, that the fact that the parties stipulated to the instructions will not play a role in our analysis of some of defendant's claims.

█ Although we find that defendant did not waive his right to review under the invited error doctrine, we must still determine what standard of review to apply. "As a general rule, we will not consider issues not presented to and considered by the district court." *United States v. Harris,* 9 F.3d 493, 499 (6th Cir.1993). Nevertheless, Rule 52(b) of the Federal Rules of Criminal Procedure provides us with authority to correct plain errors that were not raised before the Dis-

trict Court.[3] Defendant agrees that plain error analysis applies.

The Supreme Court has explained the appropriate analysis for plain error review in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This Circuit discussed *Olano* in *United States v. Thomas,* 11 F.3d 620 (6th Cir.1993), and we explained that our inquiry under Rule 52(b) is four-fold:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

11 F.3d at 630. The Supreme Court's recent decision in *Johnson v. United States,* —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), confirmed that the four-factor test for plain error that we explained in *Thomas* applies when a judge fails to submit a materiality element of a crime to the jury.

Here, we will treat the stipulated instructions the same as we would treat unobjected-to instructions, by applying the plain error analysis as explained in *Olano, Thomas,* and *Johnson.*

We must find each of these four factors to be present before we can exercise discretion to correct an error. *See Johnson,* —— U.S. at ——, 117 S.Ct. at 1550.

### 1. Failure to Include "Materiality" as Element of § 1014 Offense

█ Defendant was convicted of violating 18 U.S.C. § 1014, which criminalizes "knowingly mak[ing] any false statement or report ... for the purpose of influencing in any way the action" of an FDIC-insured bank "upon any application, advance, ... commitment, or

---

**3.** FED.R.CRIM P. 52(b) provides: "(b) PLAIN ERROR. Plain errors or defects affecting substan-

tial rights may be noticed although they were not brought to the attention of the court."

loan." 18 U.S.C. § 1014. Defendant asserts that materiality is an element of this offense and that the District Court erred when it failed to instruct the jury on that element. The government counters that materiality is not an element of § 1014, so failure to instruct did not violate defendant's rights. The Supreme Court recently resolved this issue in *United States v. Wells,* —— U.S. ——, ———————, 117 S.Ct. 921, 926–31, 137 L.Ed.2d 107 (1997), holding that materiality of falsehood is not an element under § 1014. Accordingly, this claim of error has no merit.

## 2. Instruction that Bank Was Federally Insured

■ Both Counts One and Two required proof that the bank, Great Lakes Federal Savings, was federally insured at the time of the offenses. To establish this element, the government presented testimony of the bank officer who authorized the loan as well as a certificate from the Office of Thrift Supervision verifying the bank's federally insured status.

On Count One, the District Court instructed, *inter alia:*

> The fourth element which the Government must prove beyond a reasonable doubt is that the false statement was made in connection with a loan application to a bank the deposits of which were then insured by the Federal Savings and Loan Association. *That element is not an issue in this case, and so the Court instructs you that the deposits of Great Lakes Federal Savings wee [sic] then insured by the Federal Savings and Loan Association.*

(emphasis added). The court gave a similar instruction with regard to Count Two, again instructing that the bank's deposits were federally insured at the time of the offense. The parties stipulated to this instruction for both counts. Defendant did not object to the instruction at trial, but now contends that both counts must be reversed because the instruction amounted to a directed verdict on a relevant element of the offenses.

This issue is similar to that faced in *United States v. Jones,* 65 F.3d 520 (6th Cir.), *vacated and reh'g granted,* 73 F.3d 616 (6th Cir. 1995), *aff'd en banc,* 108 F.3d 668 (1997). The defendant in *Jones* was charged with possession of a firearm after a prior conviction of a felony. He stipulated that he was a convicted felon. The defendant argued that the District Court had improperly removed the stipulated element from the jury's consideration. In its opinion, this Court declined to decide whether the challenged instruction was error. Rather, we assumed arguendo that it was error, and proceeded to apply plain error analysis. 108 F.3d at 671. The Court ultimately affirmed the conviction.[4]

As in *Jones,* we assume here that the instruction was error. However, we do not find reversal warranted. First, in light the circuit split regarding the effect of a stipulated instruction regarding an element of an offense and the lack of definitive precedent in this Circuit, the error was not "plain." "At minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78. *Jones* has not clarified whether such an instruction is indeed error.

Assuming the error was plain, however, it did not affect defendant's substantial rights. The element was not seriously contested at trial and the error could not have affected the outcome. This case is similar to *United States v. Prujansky,* 415 F.2d 1045 (6th Cir. 1969), which involved an instruction that failed to include an element of an offense which required the government to prove that the goods were stolen from the place named in the indictment. The court refused to find plain error, stating that " '[t]he verdict should not be reversed on account of a defect so obviously technical.' " *Id.* at 1048 (quoting *Grandi v. United States,* 262 F. 123, 124 (6th Cir.1920)). The element of the offense at

---

4. The situation in this case and in *Jones* is distinguishable from the one in *United States v. Sharpe,* 996 F.2d 125 (6th Cir.1993), upon which the government relies for its "invited error" argument. Although all involve stipulated instructions, the District Court in *Sharpe* had not instructed the jury that a particular element of the offense had been established by the government. *See id.* at 128–29. Thus, the defendant in *Sharpe* was not claiming that the District Court had directed a verdict on an element of the offense.

issue here is "obviously technical." Indeed, at trial, defendant did not dispute that the bank's deposits were federally insured. Thus, we find that the instruction did not affect substantial rights of defendant.

Moreover, even if we were to assume that there was plain error that affected substantial rights of defendant, we would decline to exercise our discretionary power under Rule 52(b). *See Thomas*, 11 F.3d at 630. The Supreme Court recently reiterated that "[w]hen the first the first three parts of *Olano* are satisfied, an appellate court must then determine whether the forfeited error ' "seriously affect[s] the fairness integrity or public reputation of judicial proceedings" ' before it may exercise discretion to correct the error." *Johnson*, at ——, 117 S.Ct. at 1550 (alteration in original) (quoting *Olano*, 507 U.S. at 736, 113 S.Ct. at 1778–79 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936))). Here, there is no dispute, and there was none at trial, that the bank's deposits were federally insured. There is no possibility that this alleged error seriously affected the fairness or public reputation of the judicial proceedings. In sum, we find that no miscarriage of justice will result from our decision.

Finally, we note that this case can be distinguished from *Jones*. In *Jones*, the district court instructed the jury: "[Y]ou *will find* that the government has established this element of the offense." As Judge Ryan suggested in his concurrence to the original panel's decision, the constitutional error with the instruction was in telling the jury what it "will find" as opposed to telling the jury that the stipulated fact was "proved." Here, the District Court simply instructed the jury that the bank's deposits were federally insured. This reading would suggest that the instruction was not an error at all. However, since this approach can be criticized as mere semantics, we prefer to base our decision on our finding that the error was not plain and did not affect defendant's rights.

### 3. Instruction that False Statements of Gross Income on Tax Returns Were Material as a Matter of Law

■ Counts Six, Ten, and Twelve through Fifteen charged defendant with fil-ing materially false income tax returns, in violation of 26 U.S.C. § 7206(1). The District Court instructed, *inter alia*:

The question of the materiality of the allegedly false statements made in connection with the subscribing or signing of a tax return is a question of law for the Court.

The Court instructs you that if you find that the defendant understated the gross income reported in his individual return, then the Court instructs you that the understatement of the gross income is a material matter as contemplated by Section 7206(1). Further, if you find that the defendant overstated gross income on the amended corporate returns, then the Court instructs you that the overstatement of gross income is a material matter as contemplated by Section 7206(1).

Defendant stipulated to this instruction and did not object at trial. On appeal he argues that his convictions on these counts must be reversed because the instruction removed the issue of materiality from jury consideration.

We apply the four factor test for plain error established in *Olano*. For the purposes of our analysis in this case, we assume that defendant satisfies the first three elements of the test and rest our decision on the fourth prong. Under this prong, reversal is only appropriate if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Johnson*, at ——, 117 S.Ct. at 1550 (alteration in original) (quoting *Olano*, 507 U.S. at 736, 113 S.Ct. at 1778–79 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936))). We find that reversal is not appropriate in this case.

■ Criminal liability under 26 U.S.C. § 7206(1) attaches to any person who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." *Id.* Under this section, false statements are material if they make it more difficult for the

IRS to verify defendant's tax returns. *United States v. Fawaz,* 881 F.2d 259, 263–64 (6th Cir.1989). In this case, the evidence established that defendant understated by significant and substantial sums the gross income stated in the individual returns he filed in 1985, 1987, and 1988. In an attempt to conceal these false statements, he then overstated by significant and substantial sums the gross income reported in the amended corporate returns. These false statements caused a substantial tax deficiency and were clearly large enough to interfere with the IRS in its effort to police and verify tax returns. The whole of the evidence on appeal established the unquestionable materiality of defendants misstatements. In these circumstances, it is impossible to conclude that the instructions at trial affected "the fairness, integrity, or public reputation of judicial proceedings." *Johnson,* at ——, 117 S.Ct. at 1550.

### D. Ineffective Assistance of Counsel

Defendant contends that he was denied effective assistance of counsel, primarily because counsel failed to discuss certain exhibits at trial which would have corroborated his testimony that certain income was corporate and not personal. Defendant concedes that this issue was not raised before the District Court and, therefore, asks us to remand for development of a record and an initial determination.

■ Ineffective assistance of counsel claims are not ordinarily cognizable on direct appeal. *See United States v. Seymour,* 38 F.3d 261, 262 (6th Cir.1994). The exception to this rule occurs when the record is adequate to address the claim. *See United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990) (per curiam). Defendant's request for a remand suggests that he does not believe the record is currently adequate. We agree. "The more preferable route for raising an ineffective assistance of counsel claim is in a post-conviction proceeding under 28 U.S.C. § 2255," whereby the parties can develop an adequate record. *United States v. Carr,* 5 F.3d 986, 993 (6th Cir.1993). Accordingly, we decline to remand.

### E. Credibility or Adequacy of Evidence

■ Pro se, defendant contends that evidence presented at the sentencing hearing establishes that the evidence presented at trial was faulty as to certain aspects of the computation of tax due and owing and the interpretation of the books and records of his accounting firm. Presumably, defendant believes that a new trial should be ordered.

This matter is not properly before us on this appeal. Defendant has raised these issues in a separate appeal, seeking a new trial on the grounds of newly discovered evidence. We have affirmed the District Court's denial of a new trial. We will not reconsider the issue here.

### F. Prosecutorial Misconduct

■ Pro se, defendant contends that the trial was infected by prosecutorial misconduct. Defendant bases his claim on "newly discovered" evidence which he alleges demonstrates that the prosecution lied. Again, these arguments were considered and rejected in defendant's appeal of the District Court's denial of his motion for a new trial on the grounds of newly discovered evidence. We will not reconsider this claim here.

■ Defendant also asserts that the prosecutor committed misconduct when he asked defendant in front of the jury, "Do you know what an oath is? Do you know the penalty for lying?" The prosecution also asked defendant whether he knew that he could be prosecuted for perjury. We find that the prosecutor's actions did not constitute misconduct. This court has held that merely advising a witness of the consequences of perjury does not violate due process. *See United States v. Pierce,* 62 F.3d 818, 832 (6th Cir.1995). If such communication results in silencing a witness, then the court may conclude that a violation occurred. *Id.* We find that the prosecutor's statements did not intimidate defendant into refusing to testify, and we conclude that such communication did not constitute misconduct in this case.

### G. Juror Misconduct

■ Pro se, defendant asserts that he did not receive a fair trial because the jury fore-

man was the son of a car salesman with whom defendant allegedly has an acrimonious business relationship. From defendant's pro se brief we gather that defendant raised this issue before the District Court in a motion for a new trial. This case involves an appeal from the District Court's judgment of conviction and sentence. There is no appeal before us from the denial of that motion.

## H. Evidence Regarding State Tax Returns

In order to prove criminal intent, the government introduced evidence pursuant to FED.R.EVID. 404(b) that defendant had not filed his state income tax returns for a number of years.[5] This evidence consisted mainly of a certificate of non-filing from the State of Michigan Department of Treasury. The government referred to this evidence a number of times during the course of the trial. After the trial, but before sentencing, the State of Michigan informed the government that defendant actually did file his state tax returns for some of those years. In his reply brief only, defendant argues that the introduction of this false evidence during trial mandates reversal.

This issue is not properly before us on this appeal. In a separate appeal, defendant has already sought a new trial on the grounds of this newly discovered evidence. We rejected defendant's claim in that appeal, and we will not reconsider the issue here.

## III. Conclusion

For the foregoing reasons, we reject defendant's assignments of error.

---

**5.** Rule 404(b) provides in pertinent part:
(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . . FED.R.EVID 404(b).