**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0343n.06**
**Filed: May 3, 2005**

**Case No. 03-3298**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| SOLOMON ISRAEL, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: NELSON, SILER and BATCHELDER, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Defendant-Appellant Solomon Israel appeals

from his conviction and sentence for conspiracy to possess with intent to distribute in excess of five

kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; money laundering in violation

of 18 U.S.C. § 1956(a)(1)(B)(i); traveling in interstate commerce to promote a drug conspiracy in

violation of 18 U.S.C. § 1952; and conspiring to defraud the United States by causing the

preparation of false income tax returns in violation of 18 U.S.C. § 371. Specifically, Israel asserts

that the evidence presented at trial was insufficient to sustain his convictions for drug conspiracy

and interstate travel in support of that drug conspiracy; his trial counsel was ineffective; there was

a prejudicial variance between the crimes alleged in the indictment and the proofs submitted at trial;

the prosecutor engaged in misconduct during closing argument; the district court erred in calculating

the amount of money involved for sentencing purposes by a preponderance of the evidence; and that

the district court erred by applying the drug sentencing guidelines rather than the money laundering guidelines. For the reasons set forth below, we AFFIRM the district court's judgment as to the first four assignments of error, but we conclude that the sentencing order must be VACATED and the matter REMANDED for re-sentencing.

**I.**

Dennis Hunter began dealing drugs in 1986. In 1994, Hunter found a reliable cocaine connection in California named Anthony Treggs, and he took on a partner named Ronniell Jones. By 1996, Hunter was the leader of a major drug distribution ring in Dayton, Ohio. Hunter and Jones hired a group of couriers to take drug money to California and return to Dayton with cocaine. They were bringing up to 30 kilograms of cocaine into the Dayton area every two weeks. Hunter and his associates distributed some of this cocaine in powder form and some they converted to and distributed as crack.

Hunter was introduced to Israel by a drug associate in the spring of 1996 when Israel, who ran a retail business, sold Hunter various jewelry and clothing. Before long Israel had become Hunter's confidant and they began discussing how Israel could help Hunter hide some of the proceeds from his illegal drug trade. In September 1996, Hunter told Israel that he wanted out of the "narcotics trade" and that he needed to put his money into "more secure avenues." Israel aided Hunter in a number of ways.

Israel suggested to Hunter that he conceal his drug profits by investing some of the money in a Detroit flea market that Israel hoped to develop, and also by physically hiding the rest of the cash in the flea market building itself. Israel said that he could "legitimize" Hunter's unlawful money if Hunter invested in the flea market. He then took Hunter to Detroit and showed him the

2

empty building that he planned to convert into a 110-stall flea market. Hunter agreed to invest $250,000 of his drug proceeds in Israel's company, S&S Trading Post, and he testified that he planned to use the company to "take the proceeds that derived from the narcotics and clean them up as if they were legitimate money." Hunter ultimately made several payments to Israel, amounting to $190,000.

Rather than hide the rest of his cash in the flea market itself, Hunter hid the balance of his drug proceeds either at his home or at Jones's home. In early September 1996, at Hunter's home, Israel personally helped Hunter count approximately $1.1 million in proceeds from Hunter's illegal drug activities. Then on September 26, 1996, federal agents executed search warrants at the Dayton-area homes of Hunter and Jones. The agents recovered approximately $600,000 in cash at Hunter's residence, and approximately $450,000 in cash at Jones's residence. After federal authorities filed charges against Hunter, the authorities asked him via telephone to turn himself in. Instead, Hunter arranged for Israel to come to Dayton to pick him up and provide him with a temporary hideout in the Dayton area. Israel instructed Hunter to "take care of [his] business properly" before turning himself in, and Hunter was able to collect nearly $150,000 in outstanding drug debts before Israel took him to Detroit, Michigan.

Once in Detroit, Israel arranged for a Detroit-area attorney to represent Hunter. Israel suggested that Hunter tell the Internal Revenue Service that the money found during the searches of Hunter's and Jones's homes in Dayton was gambling proceeds, because such proceeds are difficult for the government to trace. Hunter signed blank tax returns provided by Israel, and Israel arranged for the filing of false tax returns indicating that 85 percent of Hunter's income came from gambling, and the other 15 percent came from automobile sales. Israel also had a local attorney

3

prepare an S&S Trading stock certificate transferring the stock out of Hunter's name. Before Hunter turned himself in, Israel gave him a vest embroidered with various gambling icons, apparently believing that the vest would support Hunter's claim that he had made most of his money gambling. Israel then drove Hunter back to Dayton where Hunter turned himself in to the authorities.

Based on coconspirators' accounts of his activities, a federal grand jury indicted Israel for conspiring to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846; money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); traveling in interstate commerce to promote a drug conspiracy in violation of 18 U.S.C. § 1952; conspiring to defraud the United States by causing the preparation of false income tax returns in violation of 18 U.S.C. § 371; a second drug conspiracy charge relating to actions in 1997; and a second charge of traveling in interstate commerce in order to promote the 1997 conspiracy. A jury found Israel guilty on the first four counts, but not guilty on both counts having to do with the 1997 drug conspiracy. The district court sentenced Israel to concurrent prison terms of 120 months for the drug conspiracy count; 41 months for money laundering; 60 months for interstate travel in aid of a racketeering enterprise; and 30 months for conspiring to commit tax fraud.

## II.

Israel claims that there is insufficient evidence to support his conviction on the counts of the indictment charging conspiracy to distribute cocaine (Count I) and traveling in interstate commerce to promote that conspiracy (Count III). He argues that the drug conspiracy ended before he agreed to launder any money for Hunter, and that he is therefore part of only a second, separate conspiracy that focused solely on money laundering, and not on drug distribution. Because there is no evidence that he participated in the drug conspiracy alleged in Count I, Israel contends, he necessarily could

4

not have been convicted on Count III. Ordinarily, in reviewing a conviction for sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Here, however, Israel failed to renew a Rule 29 motion for judgment of acquittal at the close of the evidence. "Failure to renew a motion for judgment of acquittal at the close of all the evidence limits the reviewing court to examine for plain error or to determine whether a manifest miscarriage of justice has occurred." *United States v. Rigsby*, 943 F.2d 631, 644 (6th Cir. 1991).

The government presented evidence sufficient to support a conviction on both of these counts. Hunter testified that Israel helped him count $1.1 million in illegal drug proceeds, urged him to give Israel more money either to launder or hide, and actually took $190,000 from Hunter to invest in his shell company in order to "clean up" the money. Hunter further testified that he told Israel that this money was obtained primarily through illegal drug transactions. Contrary to Israel's claim on appeal, the drug conspiracy continued well after he began laundering money for Hunter. Despite Hunter's intention to eventually "get out of the game," Treggs, at Hunter's request, consummated a transaction with Jones involving half a kilogram of cocaine just the night before federal agents searched the homes of Hunter and Jones on September 26, 1996. After the search, Israel facilitated Hunter's collection of drug debts, and helped Hunter flee from the authorities into Michigan where he arranged for the filing of false income tax returns and attempted to cover up Hunter's participation in S&S Trading Post by changing corporate documents.

We find no plain error or manifest miscarriage of justice here. Accordingly, we affirm the jury's verdicts of guilty on Counts I and III.

5

**III.**

Israel also contends that his trial counsel provided ineffective assistance by waiving a Rule 29 motion as to Count I at the close of the government's case-in-chief, and failing to renew a Rule 29 motion as to Count III at the conclusion of all the evidence. Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review de novo. *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999). While ineffective assistance of counsel claims are generally not cognizable on direct appeal, but are more properly reviewed through a post-conviction proceeding such as a motion pursuant to 28 U.S.C. § 2255, *see Id.*, we have "recognized an exception to this general rule when the existing record is adequate to assess properly the merits of the claim." *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998). Israel asserts that the record is sufficiently developed to show that his trial counsel was ineffective for failing to preserve the issue of insufficiency of the evidence on Counts I and III.

In order to prevail on a claim of ineffective assistance of counsel, Israel must prove that his trial counsel's performance was so deficient as to fall below an objective standard of reasonableness, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As we stated in *Maupin v. Smith*, "[g]iven our conclusion that there was sufficient evidence to support [defendant's] conviction, we conclude that counsel's [failure to move for a directed verdict] did not result in such prejudice as to meet the second part of the *Strickland* standard." 785 F.2d 135, 140 (6th Cir. 1985). Likewise, because we have already concluded that there was sufficient evidence to support Israel's convictions, he cannot meet the prejudice prong of *Strickland* by establishing that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

6

**IV.**

Israel further asserts that the district court improperly admitted testimony concerning pre-1996 drug activity by Hunter and his co-conspirators, and that this evidence led to a prejudicial variance between the 1996 conspiracy alleged in the indictment and the proofs submitted at trial. As an initial matter, we hold that the district court did not abuse its discretion by admitting evidence regarding the operation of an ongoing drug conspiracy prior to the time that Israel joined the conspiracy. *See United States v. Bartholomew*, 310 F.3d 912, 920-22 (6th Cir. 2002) (holding that such evidence is permissible to prove the existence and the extent of the conspiracy charged in the indictment). We review de novo Israel's related claim that there was an amendment or variance to the indictment. *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998).

The Fifth Amendment guarantees that an accused be tried only on those offenses presented in the indictment returned by a grand jury. *See Stirone v. United States*, 361 U.S. 212, 217-19 (1960). "A variance occurs when 'the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). "A variance rises to the level of a constructive amendment to the indictment when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Rashid*, 274 F.3d 407, 413-14 (6th Cir. 2001) (quoting *Barrow*, 118 F.3d at 488).

Israel has failed to show that there was either a variance or a constructive amendment to the

7

indictment. Israel continues to argue that there were separate drug and money laundering conspiracies. But Hunter's testimony was filled with prospective statements, including "My future plans was to get out of narcotics" and "I was getting out of the game." As noted above, on September 25, 1996, Treggs delivered one half of a kilogram of cocaine to Dayton at Hunter's request. This occurred well after Israel had agreed to launder Hunter's drug proceeds, and after Hunter had given Israel $190,000 in cash. Israel then helped Hunter hide from authorities and he assisted Hunter in collecting old drug debts. These events clearly indicate that there was an ongoing drug conspiracy, and that Israel embraced its overall aims and took overt steps to help its success. *See United States v. Schultz*, 855 F.2d 1217, 1221-22 (6th Cir. 1988). Israel was charged in the indictment for conspiring with intent to possess and distribute cocaine. The proofs presented at trial related to the drug conspiracy. Moreover, "even when evidence is presented of activities that occurred outside of the conspiracy dates charged in the indictment . . . that [does] not constitute a fatal variance." *Rashid*, 274 F.3d at 414-15. Because the facts at trial did not prove facts materially different from those alleged in the indictment, there was no variance or amendment to the indictment.

## V.

Israel's last argument concerning his conviction is that the prosecutor committed misconduct by improperly vouching for witnesses during closing arguments. He cites to four specific statements that he alleges were improper. Whether the government's argument amounted to prosecutorial misconduct and whether the argument rendered the trial fundamentally unfair are mixed questions of law and fact that we review de novo. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 592 (6th Cir. 1998). When no objections were made to the conduct below, however, the defendant bears the

8

burden of showing that the alleged prosecutorial misconduct was so "exceptionally flagrant that it constitutes plain error." *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)).  In determining whether comments were flagrant, we consider whether the statements tended to mislead the jury or prejudice the defendant; whether the statements were isolated or among a series of improper statements; whether the statements were deliberately or accidentally placed before the jury; and the total strength of the evidence against the defendant.  *United States v. Green*, 305 F.3d 422, 429-30 (6th Cir. 2002).

The first two examples of alleged prosecutorial misconduct involved, according to defendant, an "attempt[] to shift the burden of proof to the Defendant."  During closing arguments, the prosecutor stated, "The government submits that the cross-examinations of these witnesses did not reveal any material discrepancies, any showing of untruthfulness on their part."  A short time later, the prosecutor referred to the "inability, via cross-examination to show any real lack of truthfulness."  Although the briefs state otherwise, defense counsel did object to the latter statement.  Neither statement, however, constituted prosecutorial misconduct or unfairly shifted the burden of proof to defendant.  Each raised a proper matter for jury consideration—the defense's apparent inability during cross-examination to elicit damaging material inconsistencies to the government witnesses' testimony.  These statements did not mislead the jury or indicate a personal belief on the part of the prosecutor that the witnesses had told the truth, but merely pointed out that, in the prosecutor's view, the cross-examination had failed to reveal discrepancies.

The prosecutor also referred to "Mr. Hunter's extremely incredible - excuse me. Extremely credible testimony from that witness stand," to which Israel objected.  The district court overruled the objection, drawing a distinction between "vouching" and "submitting the credibility" of the

9

witness. The district court did not err in overruling defendant's objection. The statement was a conclusion drawn from a 12-point presentation showing how the testimonial and documentary evidence corroborated Hunter's testimony about Israel's role in the drug distribution conspiracy. After discussing this evidence, the prosecutor submitted the issue of credibility to the jury. This statement was not "fundamentally unfair." *Gaitan-Acevedo*, 148 F.3d at 592.

> Finally, when discussing the witnesses who testified at trial, the prosecutor stated:
>
> They didn't want to testify. They didn't want to cooperate. Hunter spent two years trying to work up the intestinal fortitude to do it. They cooperated because it was true. Those were the individuals that they cooperated against that they committed the crimes with. Those individuals, they didn't have to make up stuff.

Taken in its full context, this statement was part of a much larger discussion about the witnesses and their relation to Israel, intended to demonstrate that Hunter did not gratuitously enlarge Israel's role in the conspiracy or make up lies about the defendant. It was a rhetorical statement which, although not in the form of a question per se, put the issue of Hunter's credibility before the jury by highlighting his lack of motivation to lie. The use of rhetorical statements during closing argument is not improper. *See Green*, 305 F.3d at 430.

## VI.

Finally, Israel challenges his sentence, arguing that the district court violated the mandate of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), by determining the amount of money that was attributable to Israel from the money laundering scheme, and also by sentencing him for Count I under the "drug sentencing guidelines" instead of the "money laundering guidelines." After the briefs were filed and this court heard oral argument in this case, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), in which it held that the mandatory federal sentencing

guidelines violated the Sixth Amendment by requiring judges to enhance the sentences of defendants based on facts not found by a jury or admitted by the defendant. To remedy this problem, the Court excised from the Sentencing Act the provisions making the guidelines mandatory. *Id.* at 764. *Booker* then instructed reviewing courts to apply its Sixth Amendment holding and its remedial interpretation of the Sentencing Act to all cases on direct review. *Id.* at 769. *Booker* further mandated that reviewing courts apply ordinary prudential doctrines, such as plain error review, to determine if re-sentencing is warranted. *Id.*

Israel's sentence was enhanced, pursuant to the mandatory federal sentencing guidelines in place at the time, based on facts found by the sentencing judge. In fact, the district court found by a preponderance of the evidence that $190,000 was attributable to Israel from the money laundering scheme, and the court then converted that amount into a controlled substance equivalent for sentencing purposes. Israel's sentence therefore violates the Sixth Amendment under *Booker*. Since Israel failed to make a Sixth Amendment objection at sentencing, however, we conduct plain error review to determine if he must be re-sentenced. Under that test, there must be (1) error, (2) that is plain, (3) and that affects substantial rights. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005). If these three conditions are met, an appellate court may then exercise its discretion to notice the forfeited error if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Israel's sentence in violation of the Sixth Amendment constitutes error that is plain. *Id.* at 378-79. Moreover, according to this circuit's precedent in *Oliver*, a sentence enhancement based on judge-found facts under a mandatory guidelines system necessarily affects Israel's substantial

rights.[1]  *Id.* at 379-80.  Finally, *Oliver* dictates that any sentencing error that leads to a violation of the Sixth Amendment by imposing a more severe sentence than is supported by the jury verdict automatically diminishes the integrity and reputation of the judicial system.  *Id.* at 380.  Therefore, Israel's case must be remanded for re-sentencing.

Despite our holding that this case must be remanded for re-sentencing, we will briefly address Israel's claim that the district court erred in sentencing him for Count I under the "drug sentencing guidelines" instead of the "money laundering guidelines."  We do so because even post-*Booker*, the sentencing court is required to consider the advisory sentencing guidelines in determining a defendant's sentence.  *See Booker*, 125 S. Ct. at 757.  Israel relies heavily on the Tenth Circuit case *United States v. Morales*, in which the court found that, under the facts of that case, the district court had permissibly used the money laundering guidelines rather than those applicable to drug distribution because the government had failed to prove that the defendant had been directly involved with drugs, or that his conduct established a quantity of narcotics that was reasonably foreseeable to him.  108 F.3d 1213, 1226-27 (10th Cir. 1997).  In *Morales*, the court specifically found that "Morales was simply a money launderer."  *Id.* at 1227.  But as the district court correctly noted below, the record in this case reflects that Israel "was far more than a simple

---

[1]Speaking only for myself, I note my disagreement with *Oliver*'s unwarranted departure from traditional plain error review.  Despite purporting to apply plain error review, *Oliver* fails even to discuss, much less enforce, the defendant's traditional burden of proving that the district court's error prejudiced him.  *Oliver* reasoned that since the defendant received a sentence "beyond that which was supported by the jury verdict and [his] criminal history," he was necessarily prejudiced because he "*arguably* received a sentence that was longer than his sentence would have been absent a Sixth Amendment violation."  *Oliver*, 397 F.3d at 379-80 (emphasis added).  "Arguably" is not enough, however.  Under the ordinary plain error review that *Booker* requires, 125 S. Ct. at 769, a defendant bears the burden of proving that he was prejudiced by the error, *United States v. Olano*, 507 U.S. 725, 734 (1993): i.e., that absent that error, he would more likely than not have received a lower sentence.  By simply ignoring this requirement, *Oliver* effectively holds that every Sixth Amendment violation in a *Booker*-type case automatically prejudices a defendant, a holding that is not required by *Booker*, *see Booker*, 125 S. Ct. at 769, and which does not comport with Supreme Court precedent.  Nevertheless, as *Oliver* is now binding precedent in this circuit, I am bound to follow its mandate unless and until a contrary rule is developed by this court *en banc* or by the Supreme Court.

12

money launderer." Because we find that the facts of Israel's case are in stark contrast to those considered by the Tenth Circuit in *Morales*, we would not think it inappropriate for the district court to consider the drug sentencing guidelines as advisory if it chooses to do so on remand.

## VII.

For the foregoing reasons, we **AFFIRM** the judgment of conviction in all respects; we **VACATE** the district court's sentencing order and **REMAND** the case to the district court for re-sentencing.