*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0314P (6th Cir.)
File Name: 02a0314p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*                                    No. 00-4341

WILLIE GREEN, JR.,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00106—Joseph P. Kinneary, District Judge.

Argued: May 2, 2002

Decided and Filed: September 12, 2002

Before: GUY and BATCHELDER, Circuit Judges;
          COHN, Senior District Judge.*

---

## COUNSEL

**ARGUED:** Irwin G. Lichter, LAW OFFICES OF IRWIN G. LICHTER, Miami, Florida, for Appellant. Michael J. Burns, ASSISTANT UNITED STATES ATTORNEY, Columbus,

---

* The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Ohio, for Appellee.  **ON BRIEF:**  Irwin G. Lichter, LAW OFFICES OF IRWIN G. LICHTER, Miami, Florida, for Appellant.    Michael J. Burns, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

—————————

**OPINION**

—————————

AVERN COHN, Senior District Judge.

## I.  Introduction

This is a criminal case.  Defendant-Appellant Willie Green (Green) appeals from his conviction and sentence.  He raises five errors, which include evidentiary errors, prosecutorial misconduct, an error in sentencing, and a claim that his counsel was denied a right to allocate at sentencing.  We find no merit to Green's assignments of error with one exception - that the district court denied his counsel's right to allocate at sentencing.  Accordingly, we affirm in part, reverse in part, and remand for resentencing.

## II.  Background

### A.

On January 19, 1990, Green was charged with several others in a 37-count indictment in a multi-count drug conspiracy and tax evasion conspiracy/criminal enterprise.  Green was charged in Count 1 with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and in Counts 21, 27, 31, and 33 with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Green's co-defendants were Robin Warner, Michelle Angel, Joyce Richmond, Juniata Redd, Claudette Foster, and Linda Hardy.  Green, Warner, Angel, Richmond and Redd went to trial on May 7, 1990.  Foster and Hardy pled guilty

and testified for the government. On May 18, 1990, Green was found guilty by a jury as charged in the indictment. Green was released on bond pending sentencing.

On August 24, 1990, Green failed to appear for sentencing and a bench warrant was issued. Meanwhile, Green's co-defendants were sentenced and appealed their convictions, which a panel of this court affirmed in *United States v. Warner*, 971 F.2d 1189 (6th Cir. 1992).

Almost ten years later, on April 26, 2000, Green was arrested on the outstanding warrant. He was living in Florida under an assumed name. On June 27, 2000, a single count information was filed charging him with failing to appear, in violation of 18 U.S.C. § 3146(a)(1) and § 3146(b)(1)(A)(i). On July 27, 2000, Green pled guilty to the information and the cases were consolidated for sentencing. The plea agreement contained no agreement as to sentencing, other than to state that Green understood he faced a maximum penalty of 10 years on the failure to appear charge and that any sentence imposed would be consecutive to his drug sentence.

On October 12, 2000, Green was sentenced to 151 months imprisonment on the drug charges and 14 consecutive months on the failure to appear charge, for a total of 165 months imprisonment.

**B.**

The factual background leading to Green's conviction is as follows:

Members of the organized crime drug enforcement task force in Columbus, Ohio, began investigating Robin Warner's alleged drug network in August of 1988. The investigation was spearheaded by the Internal Revenue Service, the Drug Enforcement Administration and the Columbus Police Department's Organized Crime Bureau.

Working with the United States Attorney's office, the Task Force conducted a lengthy grand jury investigation that involved the service of over 200 grand jury subpoenas. Special Agent Denise Pickering (IRS) and Detective Ronald Price utilized a confidential informant, Kevin Richmond, to record inculpatory conversations between co-conspirators Linda Hardy, Joyce Richmond and Robin Warner, the latter being interviewed July 11, 1989. Prior to the interview Pickering advised Ms. Warner that she was a target of the Grand Jury's investigation. Pickering also advised Warner of her Miranda rights. During the interview Ms. Warner cited two false sources of income, gifts and inheritance.

On July 24, 1989, Pickering and Price interviewed Juniata Redd at the residence of Redd's parents. Redd was advised of the existence of the federal grand jury investigation, and the agents explained they were investigating a drug organization headed by Robin Warner. Redd admitted she had previously taken paid trips with Warner, her cousin, to Atlanta before but maintained that she had discontinued such activity.

Marvin Warner, husband of Robin Warner, was arrested and interviewed by Special Agent Pickering and Detective Price on September 1, 1989. A search warrant was then obtained for Mr. Warner's apartment. Thereafter, Mr. Warner became a government witness. Marvin Warner was charged with two federal narcotics violations and entered into a plea agreement which required his truthful testimony.

Several other co-conspirators, Claudette Foster, Effie Thomas, Linda Hardy, John Davie and Leo Buggs, were interviewed and re-interviewed. Each provided detailed documentary information (bank records, pager records and personal records) linking Robin Warner to cocaine trafficking. Handwriting exemplars were received from each defendant and were compared with hotel reservation cards at several Atlanta hotels and other related documents. Positive handwriting identifications were made for Warner, Angel and Richmond. An additional probable handwriting identification was made for Angel.

years, the offense level is increased by nine levels, under U.S.S.G. § 2J1.6(b)(2)(A).                    + 9

**Adjusted Offense Level**: (Subtotal):                    15

**Multiple Count Adjustments:**

Because the failure to appear offense embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the drug offense, they are grouped together under U.S.S.G. § 3D1.2(c). Also U.S.S.G. 2J1.6, Application Note 3, states that in the case of a conviction on both the underlying offense and the failure to appear, the failure to appear is treated under 3C.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense, and the failure to appear offense and the drug offense are grouped together under 3D1.2(c). As the courts are grouped together under 3D1.2(c), the group which results in the highest offense level is used. U.S.S.G. 3D1.3(a). In Green's case, that is an offense level of 34.

**Total Offense Level**:                    34

# APPENDIX A

## Offense Level Computations

The 1998 edition of the Guidelines Manual was used to calculate Green's sentencing range.

With respect to Green's drug offense, all of the counts (Counts 1, 21, 27, 31 and 33) would be grouped together under U.S.S.G. § 3D1.2(d) as the offense level is determined on the basis of the total amount of the quantity of controlled substances involved.

### Count 1: Conspiracy to Distribute Cocaine

### Counts 21, 27, 31, and 33: Possession with Intent to Distribute Cocaine

**Base Offense Level**:  The guideline for violations of 21 U.S.C. §§ 841(a)(1) and 846 are found at U.S.S.G. § 2D1.1 (a)(3)(c)(4).  That section provides that the base offense level for at least 5 kilograms, but less than 15 kilograms of cocaine of 32.                                                        <u>32</u>

**Adjustment for Obstruction of Justice**:  As Green failed to appear for sentencing on August 24, 1990, his offense level was increased by two levels for obstruction of justice under U.S.S.G. § 3C1.1.                                          +<u>2</u>

**Adjusted Offense Level**:  (Subtotal):                     <u>34</u>

### Count 1: Failure to Appear for Sentencing

**Base Offense Level**:  The guideline for a violation of 18 U.S.C. § 3146(a)(1) is found at U.S.S.G. § 2J1.6(a)(2).  That section provides that the base offense level is six.         <u>6</u>

**Specific Offense Characteristic**:  As the base offense level was determined under subsection (a)(2), and the underlying offense was punishable by a term of imprisonment of 20

Similarities in handwriting were found to exist in questioned documents examined relating to defendant Willie Green.

Voluminous telephone records, car rental records, hotel registrations, credit card bills and bank records were utilized to trace and corroborate each alleged cocaine trip to Atlanta, Georgia.  Summary exhibits were prepared by Price and Pickering for each charged trip to Atlanta.

The evidence adduced at trial established that, during the calendar years 1985-1988, Robin Warner failed to report a minimum of $217,829.00 on her federal income tax returns.  A review of the record indicates that the vast majority of the unreported income was determined by documenting purchases of large-ticket luxury items:  a new house, a swimming pool, an entertainment system, a sable bedspread for $5,577.75, ten sable pillows for $1,300.00, furniture invoices, expensive furs and clothing, a pool table and ten rental properties.  Witnesses established that Robin Warner and her assistants counted thousands of dollars prior to making each trip to Atlanta to meet an individual named "Kenny."  Several witnesses knew cocaine and money were stored in a safe in Robin Warner's son's bedroom closet.  An examination of the hotel records revealed Robin Warner and her assistants would drive to Atlanta, remain less than 24 hours and immediately return.  Telephone toll records indicated that a call would be placed to Willie Green's residence and/or business in Miami after Ms. Warner arrived in Atlanta.  Thereafter, a phone call from Green's residence would be placed to a phone number in greater Atlanta.  A review of the hotel registration cards indicates a check-out immediately following the call.  Hotel bills indicating occupancy by Robin Warner, Joyce Richmond and Juniata Redd were paid with Robin Warner's American Express cards.  Marvin Warner and Kevin Richmond identified the photograph of Willie Green as "Kenny," the drug supplier from Miami.

. . . .

Testimony at trial, if believed, established that the following individuals were supervised or managed by Robin Warner: the three housekeepers (Hardy, Foster and Thomas), Kevin and Joyce Richmond, Marvin Warner, Willie Cross [sic], Michelle Angel and Juniata Redd.

*Warner*, 971 F.2d at 1192-94 (internal footnote omitted).

Green was primarily implicated by the testimony of Marvin Warner, the ex-husband of Robin Warner who pled guilty and testified for the government, and Kevin Richmond, Joyce Richmond's husband. Green was the supplier of the cocaine used in the conspiracy.

Green claims five errors:

1. The trial court erred in allowing the government to call Marvin Warner's attorney to testify, in violation of the witness sequestration order, and in further limiting the defendant's cross-examination of Warner.

2. The prosecutor's comments during closing argument constituted impermissible comments on the burden of proof and on defendant's failure to testify.

3. The prosecutor improperly questioned defense witnesses about an alleged seizure of $18,000 from the defendant in 1979.

4. The district court erred in its calculation of the sentencing guidelines for the failure to appear charge in connection with the drug offense.

5. The trial court through misleading comments improperly limited counsel's right to allocution on behalf of his client.

Each claimed error will be separately considered.

## V. Conclusion

For the reasons stated above, we AFFIRM IN PART, REVERSE IN PART, AND REMAND this case to the district court for resentencing consistent with this opinion.

in the PSI. The guidelines for his drug offense was level 32. It's 120 –

The Court: That is at the discretion of the Court, isn't it?

Mr. Lichter: Yes sir, it is. But when I asked the Court about it, you told me that you were going to sentence him at the bottom of the guidelines.

The Court: Take your appeal if you think the Court doesn't have that authority. You ought to be grateful that the court is letting this defendant off as easy as he can.

Mr. Lichter: Judge, this is a man who doesn't deserve what he's getting here today. Judge, the Court —

The Court: That's all. That's all. No more.

### 3.

Our review of the record establishes that the district court did not give Green's counsel a right of allocution. After informing Green's counsel that he was going to impose a sentence at the low end of the guidelines, or 151 months, Green's counsel understandably said that his argument would be much shorter. However, the district court imposed a sentence of 165 months, an obvious surprise to Green's counsel who legitimately expected a sentence of 151 months. With considerable candor, the government stated at oral argument in response to a question that it too expected Green to be sentenced to 151 months based on the district court's comments. When Green's counsel attempted to raise an objection to the sentence, the district court essentially stopped Green's counsel from saying anything more and thus denied him the opportunity to allocute on behalf of his client. Accordingly, this case must be remanded for resentencing to afford Green's counsel the right to allocute as required by the Federal Rules of Criminal Procedure.

### III.  Analysis

### A.  Marvin Warner's Attorney's Testimony

### 1.

Green argues that the district court erred in allowing Marvin Warner's attorney to testify despite the presence of a witness sequestration order and that the trial court should have granted a mistrial because of this. Green also argues that the trial court improperly limited the cross-examination of Marvin Warner's attorney, in violation of his right of confrontation. The district court's rulings are reviewed for an abuse of discretion. *See United States v. Gibson*, 675 F.2d 825, 835-36 (6th Cir. 1982); *see also United States v. Wall*, 130 F.3d 739, 745 (6th Cir. 1997) (holding that the court reviews a district court's denial of a motion for a mistrial for an abuse of discretion which "exists when the reviewing court is firmly convinced that a mistake has been made.")

The record does not contain a sequestration order. However, the government appears to concede that such an order was in place at trial, and a review of the relevant portions of the transcript tends to indicate that such an order was in place -- both the government and Green's counsel referred to such an order. Thus, we assume that a sequestration order was in fact in effect at trial.

### 2.

Federal Rule of Evidence 615 provides that: "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." This rule serves two purposes: (1) it prevents witnesses from tailoring testimony to that of other witnesses; and (2) it aids in detecting false testimony. *United States v. Warren*, 578 F.2d 1058 (5th Cir. 1978) (*en banc*) *on reh'g*. 612 F.2d 887 (*en banc*), *cert. denied*, 446 U.S. 956 (1980). It is well-established that a violation of a sequestration order does not automatically bar a witness' testimony. *United States v. Bostic*, 327 F.2d 983 (6th Cir. 1964).

In *Gibson, supra*, a panel of this court explained:

> Most authorities agree that "particular circumstances" sufficient to justify exclusion of a witness are indications that the witness has remained in court with the "consent, connivance, procurement or knowledge" of the party seeking his testimony. *United States v. Kiliyan*, 456 F.2d at 560; *Taylor v. United States*, 388 F.2d 786 (9th Cir. 1967); *United States v. Bostic*, 327 F.2d 983 (6th Cir. 1964); *United States v. Schaefer*, 299 F.2d 625 (7th Cir.), *cert. denied*, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962).

*Gibson*, 675 F.2d at 835-36.

Federal Rule of Evidence 611 limits cross-examination to the "subject matter of the direct examination." *See also United States v. Moore*, 917 F.2d 215 (6th Cir. 1990).

**3.**

Here, Marvin Warner testified on direct examination that the cocaine supplier was an individual he knew as "Kenny Green" and identified Green at trial. On cross-examination, however, Green's counsel produced a letter written by Marvin Warner to his ex-wife Robin Warner in which he wrote: "I have also heard someone named Willie Green got picked up in Florida. That was the name in the paper under your write-up. Who is that?"

The government was not aware of the existence of the letter prior to trial. As a result, the government sought to call James Tullis Rogers (Rogers), Marvin Warner's attorney, to question him regarding Marvin Warner's knowledge of Green's identity. Marvin Warner gave a limited waiver of attorney-client privilege for Rogers to testify in this regard. On direct-examination, Rogers testified, apparently over an objection which is not on the record, that he received a phone call from Marvin Warner shortly after his arrest in which he stated that he remembered "Kenny's" last name. Rogers then testified that he called a Detective Price to relay the

impose regardless of what Green's counsel said, and in any event, the sentence imposed was within the guidelines range.

This court reviews Green's claim *de novo*. *United States v. Wolfe*, 71 F.3d 611, 614 (6th Cir. 1995).

**2.**

It is clear that Green's counsel had a right to allocute at sentencing. Federal Rule of Criminal Procedure 32(c)(3) states in part that "before imposing sentence, the court must . . . afford defendant's counsel an opportunity to speak."

Here, Green's counsel began his statement to the court arguing that Green should receive a sentence "at the bottom level, or 151-months." The district court replied that "not to interfere with your statement, that's what I had in mind." Green's counsel then replied, "Judge, I think my presentation will be significantly shorter then." At which point, Green's counsel made a brief statement to the district court, followed by Green's own statement. After the district court imposed the 151-month sentence on the drug charges and the 14-month consecutive sentence on the failure to appear charge, the following exchange took place:

> Mr. Lichter [Green's counsel]: Judge, I believe at this point the Court would ask me if we have any objections to the manner of sentence or the way it was imposed. And I have to tell the Court that I feel somewhat uncomfortable. I do object because I had –
>
> The Court: You object to what?
>
> Mr. Lichter: I object to the way the Court imposed the sentence. The way I understood it, the guidelines for both offenses was 151 to 188 months. That's the way it's laid out

guidelines regarding grouping of the failure to appear offense. . . .

Additionally, we note that grouping does not amount to double counting. Although in calculating the base offense level for the drug offense, two points were added for obstruction of justice based on the failure to appear, the failure to appear conviction was separately calculated. Because under the grouping rules the highest offense level is used, the offense level for the failure to appear conviction, which in this case was 15, was not used in determining Green's ultimate sentencing range. Rather, only the offense level for the drug conviction, which takes into consideration the failure to appear by imposing the two-point enhancement, was used. *See* Offense Level Computations, attached as Appendix A. Overall, Green's sentencing range was correctly calculated under the guidelines.

### E.  Allocution at Sentencing

### 1.

The district court at sentencing indicated that he was going to sentence Green at the bottom of the guidelines range, which was 151 months. Green's counsel then said that his presentation would be shorter. However, the district court then imposed a 151-month sentence for the drug conviction and a 14-month consecutive sentence for the failure to appear conviction. When Green's counsel attempted to object to the 165-month sentence, the district court declined to entertain his comments.

Green argues that the district court misled his counsel at sentencing into shortening his sentencing arguments and denied his counsel a right of allocution. Green also argues that the district court's imposition of a harsher sentence than indicated denied him due process.

The government argues that Green's counsel and the district court merely misunderstood one another, that the district court already had in mind the sentence it was going to

information. Thus, Roger's direct-examination was confined as to how and when Rogers first heard from Marvin Warner regarding Green's identity.

During cross-examination by Robin Warner's attorney, Rogers admitted that he had been present for part of Marvin Warner's testimony. During cross-examination by Green's counsel, the lawyer attempted to ask Rogers why Marvin Warner sought his representation. The trial court refused to allow this line of questioning, based on the limited waiver of attorney-client privilege and because the questioning was outside of the scope of the direct examination.[1]

### 4.

From our review of the record, we find no violation of the sequestration order. As the government points out, it did not know of the existence of the letter prior to Marvin Warner's cross-examination. Thus, the government could not have known to have Rogers absent during Marvin Warner's testimony. Under these circumstances, the district court did not abuse its discretion in permitting Rogers to testify or in denying Green's motion for a mistrial because of Rogers' testimony.

We also conclude that the trial court properly limited Green's counsel from questioning Rogers about his representation of Marvin Warner as being outside the scope of direct-examination and outside the limited waiver of attorney-client privilege. As such, there was no violation of Green's right of confrontation.

---

[1]Incidentally, Marvin Warner testified on redirect that he wrote the letter as a ruse.

## B. Prosecutorial Misconduct

### 1.

Green says that the prosecutor in closing argument urged him to explain "why" certain facts were present in the case in an attempt to improperly shift the burden of proof and violate his constitutional right not to testify. The government argues that Green's counsel did not properly object to the government's comments and that the complained of comments were simply rhetorical questions for the jury to answer to themselves during deliberations.

Allegations of prosecutorial misconduct contain questions of fact and law that we review *de novo*. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). We must first examine whether this incident amounts to prosecutorial misconduct, and if so, whether it was so egregious as to warrant a new trial. *Id*. In reviewing a claim of prosecutorial misconduct, we first determine whether the statement was improper. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). To warrant the reversal of a conviction, the improper statements must also be flagrant, which requires consideration of the following factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Id*. at 549-50.

### 2.

Green points to the following passages from the government's closing argument to support his claim of prosecutorial misconduct:

Another thing that they are sure to do, and so I'm going to bring it up now, is every lawyer that gets up here is going to tell you there is no case here, there is no drug case because you don't have any cocaine. First of all,

*States v. Pardo*, 25 F.3d 1187, 1193-94 (3d Cir. 1994); *United States v. Agoro*, 996 F.2d 1288, 1291 (1st Cir. 1993); *United States v. Lechuga*, 975 F.2d 397, 401 (7th Cir. 1992). *See also United States v. Magluta*, 203 F.3d 1304, 1305 (11th Cir. 2000) (remanding the case to the district court for it to apply § 2J1.6 as amended in 1998), *vacating in part* 198 F.3d 1265 (11th Cir. 1999).

The Eighth and Fifth Circuits, on the other hand, have found that the sentencing guidelines in conflict with the statutory language of § 3146(b)(2) regarding the imposition of a consecutive sentence and have therefore refused to group the failure to appear offense with the underlying offense for sentencing. *United States v. Crow Dog*, 149 F.3d 847, 849 (8th Cir. 1998); *United States v. Packer*, 70 F.3d 357, 360 (5th Cir. 1995). These circuits rely on the Supreme Court holding that a guideline or guideline commentary is not authoritative if it violates a federal statute. *See Stinson v. United States*, 508 U.S. 36, 38 (1993).

We believe that the majority of the circuits have the better view -- the sentencing guidelines, U.S.S.G. §§ 3D.1, 2J1.6, and 3D1.2, clearly call for grouping a failure to appear with the underlying offense and do not violate the consecutive sentence requirement under 18 U.S.C. § 3146(b)(2). As the district court explained:

The statute governing failure to appear simply states that if a term of imprisonment is imposed for failure to appear, it must run consecutive to the underlying offense. See 18 U.S.C. § 3146(b)(2). The creative approach taken by the Sentencing Guidelines, which enhances the underlying offense [for obstruction of justice] and then designates a portion of the total punishment as the consecutive sentence for the failure to appear offense, does not offend the plain language of the statute. The court still technically issues a separate, consecutive sentence for the failure to appear offense. In fact, Amendment 579, added in 1998, attempted to clarify the

As to case law on the issue of grouping, we first note that prior panels of this court have found that grouping a failure to appear with the underlying offense is proper. As one panel stated, prior to the 1998 amendments:

The probation office outlined the proper method for determining a defendant's sentence when he is both convicted of failure to appear and found to have obstructed justice by failing to appear during the prosecution of the underlying offense. Under this method, both counts are grouped together under U.S.S.G. § 3D1.2. See United States v. Beckner, 983 F.2d 1380, 1384 (6th Cir. 1993) ("if an obstruction [of justice] offense has been used to adjust the sentence for a related offense, then in sentencing for the obstruction offense the court is required to group that offense with the related offense even when the two were separately charged and separately tried and are being separately sentenced.") The enhanced offense level for the underlying offense is compared to the offense level under § 2J1.6 ... and the higher offense level only is used to impose a single sentence.

*United States v. Flores*, No. 93-3771, 1994 WL 163766 (6th Cir. May 2, 1994) (unpublished). *See also United States v. Stokes*, No. 96-6440, 1998 WL 13409 (6th Cir. Jan. 7, 1998) (per curiam) (unpublished) (noting that under commentary to § 2J1.6 precludes grouping a failure to appear count on a failure to appear for *service* of sentence, as opposed to a failure to appear for sentencing).

We further note that the grouping issue is the subject of a circuit split, which this circuit has not clearly addressed in a published opinion. Several of our sister circuits have similarly concluded that grouping the failure to appear offense with the underlying offense for sentencing is appropriate based on the guidelines and the commentary. *See United States v. Gigley*, 213 F.3d 503 (10th Cir. 2000); *United States v. Kirkham*, 195 F.3d 126, 130-32 (2d Cir. 1999); *United States v. Jernigan*, 60 F.3d 562, 564 (9th Cir. 1995); *United*

you do have cocaine, and you know very well that this went on at a continuous and constant basis. And if you think that there is no cocaine in this case, then you ask them to explain why Ruby Melton isn't married anymore; you ask them to explain why Claudette Foster and Juniata Redd had to go through rehab; you ask them why Curtis Slater spent the entire bulk of his life savings, and you ask them why they caught Marvin Warner with the cocaine at the Whitehall motel. There's plenty of cocaine in this case.

. . . .

The repeated phone activity between Robin Warner, Michelle Angel and Willie Green's home and business. They're going to tell you that this is all about some goddaughter. Then why if it's about a goddaughter, do you try to reach somebody by a pager I suggest to you that this is about the dope business. It's not about calls to set up meetings down in Florida so we could all get together and discuss the kids.

. . . .

Furthermore, on that pen register you're going to see cellular phone telephone calls. Why are cellular phones calling Robin's house. You're going to see pager numbers. Why are these pager numbers on this pen register stuff? And if she's really in the flower business and she only has one driver and two vehicles, what does she need 10 pagers for?

. . . .

The same thing happens with his van. Isn't it odd that a guy takes out a van and he lists his address not as his address down in Florida; but the dope van that he uses to deliver dope in, he keeps that as a Georgia License: Highway 332, Post Office Box 84. What kind of address is that for a guy who's a businessman, a legitimate businessman from Miami Florida?

### 3.

As an initial matter, we reject the government's argument that Green's counsel failed to properly object. Green's

counsel objected to the closing argument and moved for a mistrial at the end of the closing argument. The fact that Green's counsel did not object continuously during the closing after the alleged improper remarks does not mean that this issue is not preserved for review.

However, having reviewed the challenged comments together with the entire closing argument, we do not find that they constitute prosecutorial misconduct or an attempt to shift the burden of proof. The questions posed by the government were presented in such a way as to indicate that they were for the jury to decide during its deliberations. There is nothing improper about posing rhetorical questions within the broad scope of a closing argument. The district court did not abuse its discretion in so concluding.

### C. Questioning about the Airport Incident

### 1.

The government asked Green's wife, Ruth Green, and William Roberts, a longtime personal friend of Green's, who were both character witnesses for Green, if either of them were aware of an alleged seizure of $18,000 from Green at the Atlanta airport in 1979. Both denied any knowledge of the incident. The government did not pursue any further questioning about the incident.

Green argues that the government's questions were an improper attempt to assert facts not in evidence and the questions were unfairly prejudicial and should have been excluded under Fed. R. Civ. P. 403. The government says that the questions were proper cross-examination of character witnesses.

A district court's evidentiary rulings are reviewed for abuse of discretion. *Hancock v. Dodson,* 958 F.2d 1367 (6th Cir. 1992).

*18 U.S.C. § 3146(b)(2) does not require a sentence of imprisonment on a failure to appear count, although if a sentence of imprisonment on the failure to appear count is imposed, the statute requires that the sentence be imposed to run consecutively to any other sentence of imprisonment. Therefore, unlike a count in which the statute mandates both a minimum and a consecutive sentence of imprisonment, the grouping rules of §§3D1.1-3D1.5 apply. See §3D1.1(b), comment. (n.1), and §3D1.2, comment. (n.1).) The combined sentence will then be constructed to provide a "total punishment" that satisfies the requirements both of §5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. § 3146(b)(2). For example, if the combined applicable guideline range for both counts is 30-37 months and the court determines that a "total punishment" of 36 months is appropriate, a sentence of 30 months for the underlying offense plus a consecutive six months' sentence for the failure to appear count would satisfy these requirements. (Note that the combination of this instruction and increasing the offense level for the obstructive, failure to appear conduct has the effect of ensuring an incremental, consecutive punishment for the failure to appear count, as required by 18 U.S.C. § 3146(b)(2).)*

(emphasis added).

The third relevant guideline provision is U.S.S.G. § 3D1.2, which states that "all counts involving substantially the same harm shall be grouped together in a single group." Section 3D1.2(c) defines "substantially the same harm" to include "when one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Clearly, this is true with a failure to appear and the underlying offense, as the failure to appear is a specific offense characteristic of the drug offense.

"offense level" should be treated as referring to the combined offense level after all subsequent adjustments have been made.

(emphasis added).

Also important to consider is U.S.S.G. § 2J1.6, the guideline regarding failure to appear, providing in part that:

(a) Base Offense Level:
(1) 11, if the offense constituted a failure to report for service of sentence; or
(2) 6, otherwise.
(b) Specific Offense Characteristics
....
(2) If the base offense level is determined under subsection (a)(2), and the underlying offense is--
(A) punishable by death or imprisonment for a term of fifteen years or more, increase by 9 levels
....

Section 2J.16 was also amended in 1998 by Amendment 579. In particular, Application Note 3 was added, which provides:

3. *In the case of a failure to appear for service of sentence*, any term of imprisonment imposed on the failure to appear count is to be imposed consecutively to any term of imprisonment imposed for the underlying offense. See §5G1.3(a). The guideline range for the failure to appear count is to be determined independently and *the grouping rules of §§3D1.1-3D1.5 do not apply.*

*However, in the case of a conviction on both the underlying offense and the failure to appear, other than a case of failure to appear for service of sentence, the failure to appear is treated under §3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense, and the failure to appear count and the count or counts for the underlying offense are grouped together under §3D1.2(c). (Note that*

**2.**

Federal Rule of Evidence 405(a) establishes the procedure for introducing character evidence and the general scope of cross-examination, stating in part that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." Fed. R. Evid. 405(a). This court has noted that "relevant specific instances of conduct are only instances going to the accuracy of the character witnesses' testimony. If . . . direct testimony is addressed to community reputation, inquiry may be made about conduct, and even about charges, which may have come to the attention of the relevant community." *United States v. Curtis,* 644 F.2d 263, 268 (6th Cir. 1981).

**3.**

Here, both Ruth Green and William Roberts testified on direct examination as to Green's good character and that Green was a law-abiding citizen. Given this testimony, the government could inquire as to whether they were aware of the airport incident. When both denied having any knowledge of the incident, the government properly ended this line of questioning. The district court therefore did not abuse its discretion in allowing this line of questioning.

**D. Sentencing Calculation**

**1.**

The presentence report (PSI) grouped Green's drug and failure to appear convictions together for calculating his sentencing range. The drug conviction had a base offense level of 32 and two levels were added for obstruction of justice under U.S.S.G. § 3C1.1, producing an adjusted offense level of 34. The failure to appear conviction had a base offense level of 6. Nine levels were added under U.S.S.G. § 2J1.6(b)(2)(A) as a special offense characteristic because

the underlying offense, the drug conviction, was punishable by a term of imprisonment of 20 years, producing an adjusted offense level of 15. As explained more fully below, the grouping rules require that the highest adjusted offense level be used to calculate the total offense level. In Green's case, this was level 34. Green's criminal history category was calculated as category I, producing a sentencing range of 151-188 months. Because any sentence imposed for a failure to appear conviction must be consecutive, *see* 18 U.S.C. § 3146, the PSI noted that Green's total sentence, including any sentence for his failure to appear, could not exceed 188 months.

Green objected to the PSI calculations and the two-level increase for obstruction of justice, arguing that the failure to appear calculation should be made separately rather than as an upward adjustment to his drug conviction. In other words, Green argued that the two offenses should not be grouped together.

The district court denied the objection in a written opinion, noting a circuit split on the issue of grouping, and followed a majority of circuits holding that grouping is permissible under the circumstances.

**2.**

Green initially argues for the first time on appeal that the 1990 edition of the guidelines should have been used to calculate his sentence instead of the 1998 edition. Green argues that the 1990 edition does not call for grouping his offenses, and if his convictions were not grouped, but rather separately counted, his guideline range for the drug conviction would have been 121-151 months and his guideline range for the failure to appear conviction would have been 12-18 months or 18-24 months. Because according to Green, the possibility of a lower sentence was present, he argues that the use of the 1998 edition raises an ex post facto problem.

Because Green did not challenge the application of the 1998 edition before the district court, we review the issue for

of one count of bank robbery (18 U.S.C. § 2113), and one count of use of a firearm in the commission of a crime of violence (18 U.S.C. § 924(c)). The two counts are not grouped together pursuant to this guideline, and, to avoid unwarranted double counting, the offense level for the bank robbery count under §2B3.1 (Robbery) is computed without application of the enhancement for weapon possession or use as otherwise required by subsection (b)(2) of that guideline. Pursuant to 18 U.S.C. § 924(c), the mandatory minimum five-year sentence on the weapon-use count runs consecutively to the guideline sentence imposed on the bank robbery count. See §5G1.2(a).

Unless specifically instructed, *subsection (b) does not apply when imposing a sentence under a statute that requires the imposition of a consecutive term of imprisonment only if a term of imprisonment is imposed (i.e., the statute does not otherwise require a term of imprisonment to be imposed). See, e.g., 18 U.S.C. § 3146 (Penalty for failure to appear)*; 18 U.S.C. § 924(a)(4) (regarding penalty for 18 U.S.C. § 922(q) (possession or discharge of a firearm in a school zone)); 18 U.S.C. § 1791(c) (penalty for providing or possessing a controlled substance in prison). *Accordingly, the multiple count rules set out under this Part do apply to a count of conviction under this type of statute.*

Background: This section outlines the procedure to be used for determining the combined offense level. After any adjustments from Chapter 3, Part E (Acceptance of Responsibility) and Chapter 4, Part B (Career Offenders and Criminal Livelihood) are made, this combined offense level is used to determine the guideline sentence range. Chapter Five (Determining the Sentence) discusses how to determine the sentence from the (combined) offense level; §5G1.2 deals specifically with determining the sentence of imprisonment when convictions on multiple counts are involved. References in Chapter Five (Determining the Sentence) to the

When a defendant has been convicted of more than one count, the court shall:

(1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

(2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

(3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

(b) Exclude from the application of I§§ 3D1.2-3D1.5 any count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other terms of imprisonment. Sentences for such counts are governed by the provisions of § 5G1.2.

Subsection (b) was added in 1998 by amendment. *See* Appendix C, amendment 579 (1998). Amendment 579 was intended "to clarify how several guidelines provisions, including those on grouping multiple counts of conviction, work together to ensure an incremental, consecutive penalty for a failure to appear count." U.S.S.G. Supplement to App. C, Amendment 579 (1998).

The Commentary to § 3D1.1 states:

Application Note:

1. Subsection (b) applies if a statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. See, e.g., 18 U.S.C. § 924(c) (requiring mandatory minimum terms of imprisonment, based on the conduct involved, to run consecutively). The multiple count rules set out under this Part do not apply to a count of conviction covered by subsection (b). However, a count covered by subsection (b) may affect the offense level determination for other counts. For example, a defendant is convicted

plain error. *United States v. Fountain*, 2 F.3d 656, 669-70 (6th Cir. 1993).

An ex post facto problem exists where "the Guidelines in effect at the time of sentencing provide for a higher range than those in effect at the time the crime was committed." *United States v. Milton*, 27 F.3d 203, 210 (6th Cir. 1994) (quotation and citation omitted). The relevant language is "in effect at the time the crime was committed." Green argues that the failure to appear offense occurred, or was committed on August 24, 1990, when he failed to show up for sentencing, and therefore the 1990 edition should apply. The government argues that the failure to appear offense is a "continuing offense," and therefore was not "committed" for purposes of the guidelines until later.

This circuit has not considered whether the failure to appear is a continuing offense. The Second, Ninth and Tenth Circuits have considered the issue and hold that a failure to appear is a continuing offense. *See United States v. Lopez*, 961 F.2d 1058 (2d Cir. 1992); *United States v. Gray*, 876 F.2d 1411 (9th Cir. 1989); *United States v. Martinez*, 890 F.2d 1088 (10th Cir. 1089). We agree.

The Supreme Court has stated that an offense will be deemed continuing when "the explicit language of the substantive criminal statute compels such a conclusion or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970). In this vein, the Supreme Court has found that the crime of escape is a continuing offense. *See United States v. Bailey*, 444 U.S. 394, 413 (1980).

The statutory language of 18 U.S.C. § 3146, the failure to appear statute, does not shed any light on whether Congress intended a failure to appear to be a continuing offense, but simply provides in part that:

(a) Offense.--Whoever, having been released under this chapter knowingly--

(1) fails to appear before a court as required by the conditions of release; or

(2) fails to surrender for service of sentence pursuant to a court order; shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 3146.

However, considering *the nature of the crime* of a failure to appear compels the conclusion that a failure to appear is a continuing offense. Like the crime of escape, the crime is not complete on the day that a defendant fails to appear for sentencing, but rather continues until the defendant is apprehended and finally appears for sentencing. A defendant who fails to appear for sentencing poses the same societal threat as a defendant who has escaped -- both are convicted criminals obligated to serve, or waiting to serve, a sentence. Each day that the defendant fails to appear enhances the threat and the dangers posed by the delay and demonstrates the continuing nature of the offense. We therefore join our sister circuits in holding that a failure to appear is a continuing offense. Accordingly, the 1998 edition of the guidelines applies to Green's sentence.

We also note that even if the guidelines changed from the time Green initially failed to appear in 1990 and when he was sentenced, it was not a change to the guidelines which disadvantaged him, but rather his election to continue his criminal activity in 1990 by failing to appear for sentencing.

**3.**

Green also argues, as he did before the district court, that his offenses should not have been grouped together even under the 1998 edition because grouping is not consistent with the failure to appear statute. This issue involves interpreting the guidelines, which is a question of law subject to *de novo* review. *United States v. Edgecomb*, 910 F.2d 1309, 1311 (6th Cir. 1990).

The punishment provision of the failure to appear statute provides in relevant part:

(1) The punishment for an offense under this section is-

(A) if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for-

(i) an offense punishable by death, life imprisonment, or imprisonment for a term of 15 years or more, a fine under this title or imprisonment for not more than ten years, or both;

(ii) an offense punishable by imprisonment for a term of five years or more, a fine under this title or imprisonment for not more than five years, or both;

(iii) any other felony, a fine under this title or imprisonment for not more than two years, or both;

. . . .

(2) *A term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense.*

18 U.S.C. § 3146(b) (emphasis added).

As seen from above, the failure to appear statute does not specify a set term of imprisonment to be imposed; instead, it states that a violation may be punished by a fine, imprisonment, or both. *See* 18 U.S.C. § 3146(b). The statute's only requirement is that, if a sentence of imprisonment is imposed (as opposed to simply a fine), that sentence must run consecutively to any sentence imposed for the underlying offense(s).

In addition to the above statutory language, there are three relevant guidelines provisions with respect to grouping. First, U.S.S.G. § 3D1.1 sets forth the procedure for determining an overall offense level on multiple counts that are grouped. Section 3D1.1(a) provides: