**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0707n.06

No. 09-6535

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| CHRISTY M. BAIRD, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**Before: KETHLEDGE and WHITE, Circuit Judges; BECKWITH, District Judge.[*]**

**HELENE N. WHITE, Circuit Judge.** Defendant Christy Baird appeals her convictions of

five counts of buying, receiving or possessing stolen goods, in violation of 18 U.S.C. § 659 and

18 U.S.C. § 2. We **AFFIRM**.

## I. BACKGROUND

This case arises from a series of thefts from LeSportsac, Inc., a designer and manufacturer

of handbags. LeSportsac manufactures several product lines, including a higher-end brand called

"Toki Doki." Most of LeSportsac's products are manufactured overseas and shipped to the

company's distribution center in Stearns, Kentucky, for repackaging and distribution to retail stores

in the United States.

_____

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern
District of Ohio, sitting by designation.

During the first or second week of October 2007, LeSportsac received shipment of Toki Doki's winter line of handbags, which were decorated with a special print called "Vacanze." The earliest date scheduled for shipping these bags to retailers was October 15, which resulted in the bags becoming available for purchase by the public in late October 2007. The suggested retail price of Toki Doki "Vacanze" bags ranged from $68 to $298, depending on size.

On November 12, 2007, LeSportsac's employees in Stearns discovered that the warehouse had been burglarized. Inventories performed after the burglary revealed that a large quantity of Toki Doki handbags were missing. The police investigation led to Brandon Stephens and Richard Williams, who admitted stealing handbags from LeSportsac.

On November 21, 2007, officers visited the house where defendant Baird lived with her mother, Della Mae Meadows. They discovered several Toki Doki handbags with item numbers and descriptions matching those stolen from LeSportsac on November 12. Each bag was tagged for retail sale, and several were still wrapped in plastic. Baird and Meadows initially claimed they bought the bags at flea markets and yard sales, but Baird eventually admitted that she purchased some bags from a woman named Sandra Kidd, and others from her friend Kimberly ("Kim") Chambers. Baird and Meadows told police that they were selling the bags on eBay.

In June 2009, a grand jury indicted Baird, Meadows, and eight others on charges relating to the LeSportsac thefts. Baird and Meadows were charged, as principals and as aiders and abettors, with five counts of possessing, receiving or purchasing stolen interstate goods, one count for each month from July to November 2007. Several co-defendants pleaded guilty, including Stephens, Williams, Kidd and Chambers, but Baird and Meadows elected to stand trial.

At trial, Brandon Stephens testified that he worked for LeSportsac from March to June 2007. During that time, Stephens started stealing handbags and selling them to Kim Chambers for $15 to $20 a piece. After losing his job, Stephens teamed up with Richard Williams to break into the warehouse and steal more bags. According to Stephens, the pair stole from LeSportsac seven or eight times between August and November 2007. However, Williams testified that they broke into the warehouse five to seven times, beginning in July 2007. Each time, they stole dozens of handbags individually wrapped and tagged for retail sale. They took only Toki Doki bags, because Chambers said they would sell better. Stephens surmised that Chambers had other persons selling the bags, but he and Williams were not acquainted with, and did not sell bags to, Baird or Meadows. Stephens and Williams sold mainly to Chambers, but also gave or sold some bags to Stephens's cousin, Bonnie Lay, and to Williams's wife Misty. Misty Williams told Stephens that, if the police asked questions, she and Lay would say they bought the bags at a flea market.

Kim Chambers testified that she did business buying and selling clothes and accessories on eBay. According to Chambers, she and Baird were close friends, spoke on an almost daily basis and often did business together. Baird frequently came to Chambers's house to post bags for sale on eBay; on these occasions, Baird would see Chambers's Toki Doki inventory. Chambers admitted purchasing stolen Toki Doki bags from Stephens and Williams, and estimated that, from August to November 2007, she sold 20 to 25 bags to Baird for $40 to $50 each, including some from the Vacanze line. Chambers knew the bags were stolen, but claimed she did not tell Baird. Chambers also testified that she never sold bags to Meadows.

Bonnie Lay testified that she sold the handbags Stephens gave her on eBay, with help from Sandra Kidd. Kidd testified that, soon after the police visited Baird's home, she sold Baird three or four Toki Doki bags for $100. Kidd claimed she told Baird the bags were stolen. Kidd and Lay both testified that they never sold a single bag to Meadows.

The Government presented evidence that Baird operated eBay and PayPal[1] accounts in her great-uncle's name. Baird's eBay records show that between December 13, 2006, when she opened her account, and June 25, 2007, she listed nine Toki Doki handbags for sale, one of which was labeled as "new with tags," or "nwt," to convey its mint condition. From June 26 to 29, Baird posted 15 Toki Doki bags, 12 of them "new with tags." During the indictment period, July 1 to November 30, 2007, Baird sold 232 Toki Doki bags on eBay, 215 of which were "new with tags." From October 12 to 29, 2007, she listed 22 Vacanze handbags, most of which were sold before the Vacanze product line became available in stores, for $89 to $222 a piece. Baird's Toki Doki listings increased dramatically over time, from a small minority of her sales in Spring 2007 to the dominant item of her inventory by Fall 2007.[2] Between December 13, 2006, and January 4, 2008, Baird's

---

[1]PayPal is an online service that allows customers to send and receive payment over the internet for items purchased or sold on eBay.

[2]The proportion of Toki Doki handbags in Baird's eBay listings increased over time: December 13, 2006 - June 25, 2007: 9 of 497 (1.81%); June 26 - August 31, 2007: 55 of 107 (51.4%); September 1 - November 30, 2007: 192 of 210 (91.4%).

PayPal account received payments totaling $52,704.78. The Government provided similar evidence regarding Meadows.[3]

The defense offered testimony that used and mint-condition LeSportsac handbags could often be obtained from various sources, including yard sales and flea markets. However, only one witness – Della Meadows's aunt by marriage – testified that she found mint-condition Toki Doki handbags at such locations. A manager for LeSportsac testified that, contrary to its regular product lines, the company did not distribute Toki Doki bags to discount outlets, and destroyed second-quality bags rather than sell them to employees.

On September 17, 2009, the jury convicted Baird and Meadows on all counts. Baird was sentenced to 17 months' imprisonment and ordered to pay $48,270 in restitution together with her co-defendants.

## II. DISCUSSION

Baird contends that the evidence was insufficient to sustain her convictions. She also claims that the district court erred in preventing her from presenting evidence that she was a law-abiding citizen and in failing to investigate a possible separation-of-witnesses violation.

---

[3]On July 16, 2007, Meadows created eBay and PayPal accounts in the name of her deceased husband. Between July 16, 2007, and January 5, 2008, she generated $20,721.66 in eBay sales. "New with tags" Toki Doki handbags quickly became the predominant item in Meadows's inventory: July 29 - August 31, 3007: 8 of 24 postings (33.33%); September 1 - November 30, 2007: 147 of 191 (76.9%). In all, Meadows listed 158 Toki Doki handbags for sale, 155 of which were "new with tags," and she sold 11 Vacanze bags from October 13 to 30, 2007. Together, Baird and Meadows posted 390 Toki Doki bags on eBay from July 1 to November 30, 2007, all but 20 of which were advertised as "new with tags." They also listed a total of 33 Vacanze bags in October alone.

## A.	Insufficient Evidence

This Court reviews *de novo* whether there is sufficient evidence to support a conviction. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). The Court considers whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (*quoting United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)). A reversal on sufficiency-of-evidence grounds may only occur if the judgment is "not supported by substantial and competent evidence upon the record as a whole, [whether or not] the evidence is direct or wholly circumstantial." *Martinez*, 588 F.3d at 314 (*quoting United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)) (alteration in *Martinez*).

To establish Baird's guilt of the five counts, the Government had to prove that: (1) each month between July and November 2007; (2) Baird purchased, received or possessed stolen goods; (3) with knowledge that the goods were stolen; and (4) the goods were part of a shipment of freight moving in interstate or foreign commerce.[4] 18 U.S.C. § 659.

### 1.	Evidence to Convict of July, August, September and October Counts

_____

[4]Baird does not dispute that she purchased and sold stolen handbags in November 2007. However, she challenges the sufficiency of the evidence with regard to all other elements of the November offense, as well as all elements of the four other counts.

Baird argues the Government failed to prove that she purchased, received or possessed stolen goods for any month except November, when the police recovered several handbags at her and Meadows's home.

Viewed in the light most favorable to the prosecution, the evidence supports that Baird purchased, received or possessed stolen Toki Doki "Vacanze" handbags in October 2007. The Government established that the Vacanze bags arrived at LeSportsac's warehouse during the week preceding October 15, 2007. Stephens and Williams confessed that they stole handbags from LeSportsac during this period, and sold most of them to Kim Chambers. Chambers testified that, between August and November 2007, she sold Toki Doki bags to Baird, including some Vacanze bags. eBay records showed that from October 12 to 30, 2007, Baird and Meadows together sold 33 Vacanze bags before they were available in stores. Finally, the police found Toki Doki handbags matching those stolen from LeSportsac at Baird and Meadows's house. Viewed as a whole, this evidence establishes a direct link between the Vacanze bags that arrived at LeSportsac in the first two weeks of October 2007, and the ones Baird and Meadows sold on eBay during the latter part of the month.

A reasonable jury could find that the Toki Doki bags Baird listed on eBay in July, August and September 2007 followed the same path as the Vacanze bags she listed in October. Williams and Stephens testified that they broke into LeSportsac's warehouse several times between July and November 2007, taking only Toki Doki bags tagged for retail sale.[5] EBay records showed that "new

---

[5]Stephens also stole bags while working for LeSportsac from March to June 2007. From the time she created her eBay account in December 2006, until June 25, 2007, Baird listed one "new

with tags" Toki Doki handbags became Baird's principal merchandise during the same period.[6]

Since Baird could not satisfactorily explain how she came across so many mint-condition bags, a jury could reasonably infer that she obtained them from her good friend Kim Chambers, who, in turn, bought them from Stephens and Williams. Additionally, evidence showed that Meadows opened her eBay account in mid-July 2007, and that "new with tags" Toki Doki handbags immediately constituted a substantial portion of her offerings, notwithstanding that all witnesses denied selling bags to her.[7] Since there was no other plausible explanation for the provenance of Meadows's handbags, the jury could reasonably infer that she obtained them from Baird and that Baird purchased them from Chambers.[8]

---

with tags" Toki Doki handbag. This represents 0.002% of the 497 items she listed during that time. From June 26 to 29, 2007, Baird posted 12 "new with tags" Toki Doki bags, or 66.66% of her 18 listings for that period.

[6]For July, August and September 2007, the proportion of "new with tags" Toki Doki handbags in Baird's eBay inventory was as follows: July 2007: 19 of 43 (44.19%); August 2007: 14 of 46 (30.43%); September 2007: 21 of 34 (61.76%).

[7]The Government claims that Meadows posted seven Toki Doki bags on July 16, 2007, the day she opened her eBay account. However, the page summarizing Meadows's sales for July 16 to 28 is missing from the record. Of Meadows's 12 postings for July 29, 2007, four (33.33%) were "new with tags" Toki Doki handbags. For August and September 2007, the proportions were as follows: August 2007: 4 of 13 (30.78%); September 2007: 48 of 70 (68.57%).

[8]Several witnesses testified that mint-condition *LeSportsac* handbags could be found at yard sales and flea markets. However, there was little evidence that mint-condition *Toki Doki* bags were available this way, and certainly not in the quantities Baird and Meadows sold online. A manager for LeSportsac testified that, contrary to other product lines, Toki Doki handbags were not distributed to discount outlets or sold to employees, and that second-quality bags were physically destroyed, reducing the likelihood of finding such bags at flea markets or brokerage stores. The only person who unequivocally claimed to have found quantities of mint-condition *Toki Doki* bags at flea markets or yard sales was Debbie Johnson, who is Della Meadows's aunt by marriage. A jury could

The evidence was sufficient for a reasonable jury to convict Baird on all counts.

**2.     Knowledge of Stolen, Interstate-Commerce Goods**

Baird contends that the Government failed to prove that she knew the Toki Doki handbags were stolen, or that she knew they were goods in interstate commerce.

In a prosecution for possessing stolen goods under 18 U.S.C. § 659, knowledge of the goods' stolen nature may be inferred from evidence or circumstances that would convince a reasonable person that they were, indeed, stolen. *See United States v. Scruggs*, 549 F.2d 1097, 1104 (6th Cir. 1977) ("[C]ircumstantial evidence . . . from which an inference of the ultimate fact to be established may rationally be drawn in light of common experience can be sufficient to support a jury's determination that a defendant had guilty knowledge").

The evidence presented was sufficient to find that Baird knew the handbags were stolen. Baird initially told police that she purchased the bags at yard sales and flea markets. According to Brandon Stephens, Misty Williams intended to use the same excuse if police questioned her. Baird later admitted obtaining the handbags from Chambers and Kidd. The jury could also weigh the fact that Baird paid Chambers $40 to $50 for Vacanze bags with a retail value of $68 to $298. Baird's relationship to Chambers is also evidence from which to infer consciousness of guilt. *See United States v. Warshawsky*, 20 F.3d 204, 215 (6th Cir. 1994) (in assessing co-defendants' knowledge that goods were stolen, "the jury could properly consider the fact that the defendants were both brothers and business partners, which raises a permissible inference that they might share information

reasonably be skeptical of contradictory testimony by a defendant's relative.

concerning their business activities."). Finally, although Baird claims no one told her the bags were stolen, Sandra Kidd testified to the contrary. A jury weighing Kidd's statements together with the circumstantial evidence could reasonably find that Baird knew the bags were stolen.

Baird also argues that to convict her under 18 U.S.C. § 659, the Government had to prove that she knew the goods she received, purchased or possessed were transiting in interstate commerce. This is an issue of first impression in this circuit. In *United States v. Skoczen*, 405 F.3d 537 (7th Cir. 2005), the Seventh Circuit held:

> Congress designed the interstate commerce element of 18 U.S.C. § 659 merely to justify federal authority over the crime. A defendant does not need to know that the stolen property that he received was stolen from an interstate shipment. He need only know that the property he received was stolen.

*Id.* at 542 (*citing United States v. Zarattini*, 552 F.2d 753, 760 (7th Cir. 1977)). Other circuits agree. *See United States v. Houle*, 490 F.2d 167, 170 (2d Cir. 1973) (where a substantive offense is charged (rather than conspiracy), "actual knowledge of the interstate character of the stolen goods is not required to establish criminal liability"), *cert. denied*, 417 U.S. 970 (1974); *United States v. Petit*, 841 F.2d 1546, 1551 (11th Cir.) ("In order to sustain a conviction of conspiracy to receive stolen goods [under 18 U.S.C. § 659], it is unnecessary that the government prove that the defendants had knowledge that the goods were moving in interstate commerce.") (citations omitted), *cert. denied*, 487 U.S. 1237 (1988).

We find these precedents persuasive. Accordingly, we join these circuits in holding that "[a] substantive violation of 18 U.S.C. [§] 659 does not require knowledge of the interstate or foreign

character of the goods." *United States v. Green*, 523 F.2d 229, 233-34 (2d Cir. 1975) (citations omitted), *cert. denied*, 423 U.S. 1074 (1976).

### 3.     Attenuation

Baird contends that, even if she knew the goods were stolen, she was too far removed from the initial theft to warrant federal prosecution. Her reasoning appears to be that, since she bought handbags from Chambers – who purchased them from Stephens and Williams – her conduct is too attenuated to support a conviction under federal law. There is no evidence that Congress intended nor desired this result, and we decline to adopt such a rule.

### 4.     Proof of Shipping Document

Baird next asserts that her convictions must be reversed because the Government failed to introduce the waybill or shipping document for the Toki Doki handbags in accordance with 18 U.S.C. § 659 ("To establish the interstate or foreign commerce character of any shipment . . . the waybill or other shipping document . . . shall be prima facie evidence of the place from which and to which such shipment was made."). Baird misinterprets the statute. The law makes waybills and shipping documents prima facie evidence of the interstate nature of a shipment, but it does not prohibit establishing the same fact by other means. This Court applies a totality-of-the-circumstances analysis to establish whether a shipment is in interstate commerce at any given time. *See United States v. Goodwin*, 963 F.2d 129, 131 (6th Cir. 1992) (applying totality-of-circumstances analysis where theft occurred before a bill of lading was signed). In this case, the handbags were made in China, shipped to Kentucky for repackaging, and were to be sent to stores across the United States within a week or so. LeSportsac's warehouse was simply a layover as the bags traveled from

manufacturer to retailers; therefore, there is no question that they were commodities in interstate commerce at the time of the theft.

### 5.     Aiding and Abetting

Baird argues that the evidence was not sufficient to sustain her convictions of aiding and abetting in violation of 18 U.S.C. § 2.  To prove aiding and abetting, the Government must show: (1) an act by the defendant that contributes to the commission of the crime; and (2) the defendant's intent to aid in the commission of the crime.  *United States v. Bronzino*, 598 F.3d 276, 279 (6th Cir. 2010); *United States v. Vasquez*, 560 F.3d 461, 469 (6th Cir. 2009).  The Government must provide evidence that the defendant "offered assistance or encouragement to his principal in the commission of [the] substantive offense."  *United States v. Driver*, 535 F.3d 424, 431 (6th Cir. 2008) (*quoting United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002)) (alteration in *Driver*).

The evidence was sufficient for a reasonable jury to find that Baird contributed to the commission of the offense by: (1) purchasing stolen handbags from Chambers; (2) serving as an intermediary between Chambers and Meadows; and (3) providing Chambers with a conduit to distribute stolen goods, and with cash to purchase additional merchandise.  Therefore, the first prong of the aiding-and-abetting test is met.

Baird argues that the Government failed to prove that she intended to aid in committing the offense.  We disagree.  A reasonable jury could find intent in Baird's relationship with Kim Chambers:  not only were Baird and Chambers close friends, they were also business associates who dealt in the same goods, with the same business model.  The jury could also consider the fact that Baird's mother, Della Meadows, listed over 150 "new with tags" Toki Doki bags on eBay from July

29 to November 30, 2007. Since every witness who testified denied selling to Meadows, the jury could reasonably infer that Baird served as an intermediary between Meadows and Chambers, and deduce intent from this role.

For these reasons, we find there was sufficient evidence to convict Baird of aiding and abetting in the possession, receipt or purchase of stolen interstate goods.

## B. Evidence of Law-Abiding Character

Baird contends that the district court committed reversible error in preventing her from presenting evidence that she was a law-abiding citizen. We disagree.

At trial, Baird's attorney called a deputy sheriff from McCreary County to testify to Baird's reputation as a law-abiding citizen. *See, e.g.*, *United States v. Green*, 305 F.3d 422, 431 (6th Cir. 2002) (holding that witnesses can testify as to defendant's character as a law-abiding citizen). The prosecutor objected and stated that if the testimony were admitted, the Government would cross-examine the deputy sheriff to establish that a magistrate judge had found Baird to be untruthful. The trial judge asked Baird's attorney if she "really want[ed] to open that door," to which she replied: "I will pass to [Meadows's attorney] and think about it." (R. 290, Trial Tr., at 71-72.) Later, Baird's attorney declined a second opportunity to question the witness. The court never ruled on the admissibility of the testimony or the propriety of the anticipated cross-examination.

The trial transcript shows that Baird's attorney decided not to pursue her intended line of questioning independently of any ruling by the district court. In so doing, the attorney waived Baird's right to offer the deputy sheriff's testimony that she was a law-abiding citizen. *See D'Ambrosio v. Bagley*, 527 F.3d 489, 496 (6th Cir. 2008) (in a habeas case, where the district court

-13-

stated its understanding that the warden did not intend to raise an exhaustion-of-remedies defense, the warden's failure to object or subsequently raise the defense amounted to waiver).

## C.       Separation of Witnesses Violation

Deborah Johnson, a defense witness, testified that she spoke frequently to Sandra Kidd about the case and the trial, and that their most recent conversation occurred three nights earlier. Baird argues that the district court committed reversible error in failing to inquire *sua sponte* into these communications to determine if Kidd and Johnson coordinated their testimonies, and if Kidd spoke to other witnesses as well.

A district court may, upon request from either party or of its own accord, "order witnesses excluded so that they cannot hear the testimony of other witnesses." Fed. R. Evid. 615. *See also Green*, 305 F.3d at 428 (the twin purposes of Rule 615 are to "prevent[ ] witnesses from tailoring testimony to that of other witnesses [and] aid[ ] in detecting false testimony.") (citation omitted). Even when a party asks that a witness be excluded, the district court retains discretion to deny the request. *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003). Thus, it stands to reason that, absent such a request, the district court's discretion to *sua sponte* sequester a witness is similarly broad. *See United States v. Casas*, 356 F.3d 104, 126 (1st Cir. 2004) ("Absent a request from counsel, the district court enjoys broad discretion in determining whether or not to sequester witnesses before their testimony.") (citation omitted).

Because Baird did not raise this issue in district court, this Court's review is for plain error. Fed. R. Crim. P. 52(b); *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). To succeed on this standard, a defendant must show that: (1) an error occurred; (2) which was plain, clear or

obvious; and (3) affected substantial rights. *United States v. Davis*, 514 F.3d 596, 615 (6th Cir. 2008). Baird has not shown that Johnson and Kidd discussed what they intended to say at trial, much less that they attempted to coordinate their testimonies. Even if this was their intent, Johnson and Kidd's last conversation occurred before the start of the trial,[9] making it highly unlikely that they could successfully coordinate their testimonies. This Court will not infer improper collusion from the mere fact that two witnesses are friends who speak to each other frequently. Finally, Baird's contention that Kidd may have spoken to other witnesses is even more speculative. Accordingly, we find that the district court did not commit plain error.

### III.  CONCLUSION

The district court's order of conviction is **AFFIRMED**.

---

[9]Baird's trial began on September 14, 2009; Johnson testified on the 16th. Therefore, a discussion three nights before Johnson's testimony necessarily occurred before the beginning of trial.